655 A.2d 492

COMMONWEALTH OF PENNSYLVANIA, Appellee,

v.

**Bruce BIAGINI, Appellant.**

COMMONWEALTH of Pennsylvania, Appellant,

v.

**BARRY W. (In the Interest of), Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 20, 1994.

Decided Jan. 18,. 1995.

L. Edward Glass, Glass & Weaver, David J. Weaver, Johnstown, for appellant at No. 6.

Ronald Eisenberg, Deputy Dist. Atty., Norman Gross, Asst. Dist. Atty., for appellant at No. 3.

Wayne B. Gongaware, Asst. Dist. Atty., Jack Christin, Jr., for appellee at No. 6.

Steven C. Scarpa, Philadelphia, for appellee at No. 3.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION OF THE COURT

CAPPY, Justice.

These two appeals were consolidated for review by this Court as the Superior Court rendered inconsistent decisions.

In each case the Superior Court addressed the question of whether an individual can be convicted for resisting arrest when it is subsequently determined that the underlying arrest was unlawful, as it was not supported by probable cause. In *Biagini* the Superior Court affirmed the conviction for resisting arrest, and in *Barry W.* the Superior Court reversed the conviction for resisting arrest.

Additionally, each defendant asserts that his conviction for aggravated assault cannot stand as the assaults occurred while justifiably defending themselves from an illegal arrest. In support of the second issue the defendants rely upon the recent decision of this Court in *Commonwealth v. French*, 531 Pa. 42, 611 A.2d 175 (1992).[1]

For the reasons that follow, this Court holds that a conviction for resisting arrest cannot stand where the underlying arrest is found to be unlawful. We further hold that *French* did not create a right for an individual to resist what s/he believes to be an unlawful arrest. There is no right to resist arrest.

## BIAGINI

In the *Biagini* case the Superior Court overruled the trial court and held that the arrest was unlawful as it was not based upon probable cause. However, it went on to hold that the legality of the arrest was irrelevant to the conviction for resisting arrest and thus, affirmed the conviction. The relevant facts are as follows.

Officer Snyder, while on a routine patrol in a residential neighborhood in North Belle Vernon at 3:00 a.m., heard a disturbance. The disturbance, a loud voice shouting, seemed to emanate from the rear of a home. Upon investigating, the officer observed Biagini stagger out of the alley between the houses, look up and down the street, and stagger back into the alley. The officer drove down the alley and encountered

1. The Superior Court in resolving *Biagini* found no merit to the defendant's *French* argument. The *French* argument, although raised, was not addressed by the Superior Court in *Barry W.*

Biagini in the rear yard of his house with an unidentified female. The officer inquired of Biagini as to the disturbance. Biagini initially responded, in a loud voice, that there was no problem and then pointed at two other individuals across the alley. The officer told Biagini to remain where he was and went to investigate the other individuals. Biagini, however, left the yard and went into his home. The other individuals told Officer Snyder that Biagini had been screaming at them from his back yard and threw an object at them which they thought, from the sounds of the impact, to be a glass bottle. The officer returned to speak to Biagini.

As Biagini had left the alley, the officer approached the house and knocked on the door. Biagini responded by screaming at the officer "Who the [expletive] is tearing down my door?" Officer Snyder asked Biagini to come out to the patrol car and answer a few questions. Biagini refused and in vulgar terms ordered the officer off his porch. The officer then told Biagini he was under arrest for public intoxication and disorderly conduct. Biagini refused to comply with the officer's request to come quietly. Biagini shook free of the officer's hold and re-entered his home.

Officer Snyder went back to his patrol car, turned on his flashing lights, called for back-up, and again knocked on Biagini's door. Officer Snyder renewed his request that Biagini accompany him to the patrol car and Biagini renewed his vulgar refusal. The officer attempted to seize Biagini and a scuffle ensued. Officer Snyder was punched in the mouth and Biagini was subdued with the aid of the additional officers who had responded to the back-up call. Biagini was searched and a set of brass knuckles and a small amount of marijuana were found on his person.

At trial Biagini demurred to the evidence arguing that all the charges must be dismissed as the arrest was illegal. The trial court denied the demurrer. Biagini was subsequently convicted, after a non-jury trial, for public drunkenness, disorderly conduct, aggravated assault, resisting arrest, prohibited offensive weapons, and possession of a small amount of marijuana.

In the opinion of the trial court denying Biagini's post-trial motions the court concluded that the arrest was valid:

But after considering all of the credible evidence, it is plain to this Court that the defendant was arrested initially for public drunkenness and disorderly conduct as a result of the defendant's conduct in the presence of the officer. The behavior of the defendant on the porch of his residence, which was directed toward the officer, while the officer was conducting his investigation into a public disturbance that had earlier caught his attention, was sufficient to justify his immediate apprehension.

The Superior Court, in reviewing the same set of facts, determined that the trial court's legal conclusion as to the validity of the arrest was in error. That Court concluded:

Though Biagini's conduct may have been intemperate, unreasonable, or unjustified, here we are unable to conclude that Biagini created any *public* inconvenience, annoyance or alarm, or recklessly created a risk thereof. 18 Pa.C.S. § 5503.[2] No violent crime had been committed; no reference to a crowd or any inquisitive, uninvolved neighbors appears in the record. Biagini screamed "Who the [expletive] is tearing down my door?" while answering the door, before he knew it was Snyder. Being both vulgar and loud

2. **18 Pa.C.S. § 5503 Disorderly Conduct:**

(a) **Offense defined.**—A person is guilty of disorderly conduct if with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(1) engages in fighting or threatening, or in violent or tumultuous behavior;

(2) makes unreasonable noise;

(3) uses obscene language, or makes an obscene gesture; or act which serves no legitimate purpose of the actor.

(b) **Grading.**—An offense under this section is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a summary offense.

(c) **Definition.**—As used in this section the word "public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public.

to a police officer, while in a private residence, does not constitute disorderly conduct. [citation omitted]. What emerges is that Biagini, while allegedly intoxicated, in his home and on his porch was loud and vulgar in telling Snyder he did not want to cooperate with the officer's investigation. This incident lacks "the indicia of disorder characteristic of confrontations with 'the very type of spark the statute so plainly seeks to extinguish before it becomes a flame'." [*Commonwealth v.] Beattie*, [411 Pa.Super. 177] at 187, 601 A.2d [297] at 302. Since the factual findings do not support the trial court's legal conclusion, we are constrained to conclude that Snyder did not have probable cause to arrest Biagini for disorderly conduct.

We are also unable to conclude that Snyder had probable cause to arrest Biagini for public drunkenness. While Biagini was allegedly intoxicated in his home and on his porch, it is apparent from the record that he had not "appeared in any *public* place manifestly under the influence of alcohol to the degree that he [might] endanger himself or other persons or property, or annoy persons in his vicinity." 18 Pa.C.S. § 5505 [3] (emphasis supplied).

*Commonwealth v. Biagini,* 428 Pa.Super. 634, 627 A.2d 199 (1993).

Although the Superior Court agreed with Biagini that Officer Snyder had no probable cause to arrest him, the Court went on to reason that regardless of the legality of the arrest, the conviction for resisting arrest must stand, as Biagini had no right to resist the officer in the "performance of [his] duty." *quoting* 18 Pa.C.S. § 2702(a)(3).[4]

**3. 18 Pa.C.S. § 5505: Public drunkenness**

A person is guilty of a summary offense if he appears in any public place manifestly under the influence of alcohol to the degree that he may endanger himself or other persons or property, or annoy persons in his vicinity.

**4. 18 Pa.C.S. § 2702(a)(3),** is a section of the Aggravated Assault statute which provides:

(a) **Offense defined.**—A person is guilty of aggravated assault if he:
(3) attempts to cause or intentionally or knowingly causes bodily injury to a police officer, firefighter or county adult probation or

## BARRY W.

In the matter of *Barry W.* the Superior Court reversed the conviction for resisting arrest on the basis that the arrest was unlawful as it occurred in the absence of probable cause. The trial court had adjudicated Barry W. delinquent upon finding him guilty of aggravated assault, simple assault and resisting arrest based upon the following facts.

At approximately 10:00 p.m. on the evening of August 6, 1990, Officer Ashby, while on routine patrol, received a radio report of "a male selling narcotics at 61st Street and Lansdowne." Officer Ashby in a marked police car, in uniform, drove to the location within minutes of receiving the call. The officer observed two black males standing under a ledge. It was a dark night and it was raining hard. As Officer Ashby exited the vehicle, the two men began to run. The officer yelled "stop police" and gave chase. Officer Ashby testified that Barry W. threw an object to the other male that the Officer believed to be drugs. The officer was unable to describe the object, none of the other officers observed anything being thrown, and although both males were immediately apprehended, no drugs or other contraband were discovered.

Just as Officer Ashby began to chase the two males, another police car arrived to assist. Officer Boran from the other vehicle joined Officer Ashby in chasing and subsequently subduing Barry W. In the struggle with Barry W., Officer Boran's hand was cut on the mirror of a parked car. As a result of this incident Barry W. was found guilty of simple assault, aggravated assault and resisting arrest and adjudicated delinquent.

The opinion of the trial court focuses upon the elements of assault and fails to specifically address the legality of the underlying arrest; however, the trial court opinion clearly assumes the legality of the underlying arrest. The appeal had

parole officer, county juvenile probation or parole officer or an agent of the Pennsylvania Board of Probation and Parole in the performance of duty;

originally been reviewed by a panel of the Superior Court which reversed the trial court decision as to the resisting arrest charge. Reargument *en banc* was granted and the original panel decision was reaffirmed with two judges dissenting only as to the resisting arrest issue.

After reviewing the totality of the circumstances surrounding the arrest of Barry W., the Superior Court concluded that Officer Ashby not only lacked probable cause to arrest, but also lacked sufficient reasonable suspicion necessary to justify a *Terry* stop.[5] The basis for Officer Ashby to approach Barry W. was a radio bulletin which provided "investigate male selling drugs at ____ [location]." The bulletin was an anonymous tip with no indicia of reliability. There was no description of the male and no information regarding the source of the tip. When Officer Ashby arrived at the location two individuals who happened to be present fled before any corroborating information as to the initial anonymous tip could be ascertained. Officer Ashby testified that as he fled, Barry W. threw an object to his companion. The officer could not describe the object at all, yet he asserts a belief that the object was a controlled substance. Looking at the facts in the light most favorable to the Commonwealth, the Superior Court ascertained that this anonymous tip, which lacked descriptive information and any indication of reliability, taken together with the mysterious thrown object, and flight into the pouring rain, still did not satisfy the requirement of specific articulable facts necessary to establish a reasonable belief that criminal activity was afoot.[6] Accordingly, the Superior Court vacated the resisting arrest conviction as the underlying arrest was unlawful and affirmed the conviction for aggravated assault.

5. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), (when the police have a reasonable suspicion that criminal activity is afoot, they may make a temporary investigatory stop even though they lack probable cause to make an arrest).

6. The Superior Court noted that under *California v. Hodari D.*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), the police would have been able to seize the unknown thrown item, if they had discovered it, and use it as evidence against the appellant. However, even under *Hodari* the discovery of abandoned contraband during a chase cannot be used to retroactively justify the initial decision to stop the suspect.

## DISCUSSION

Both Biagini and Barry W. were convicted of resisting arrest and aggravated assault.[7] The defendants' argument in support of their position that the convictions on resisting arrest and aggravated assault must be reversed is set forth in the following syllogistic form: as the crime of resisting arrest cannot be sustained where the underlying arrest is unlawful, their convictions for resisting arrest cannot stand; and since the underlying arrest was unlawful they were justified in physically resisting the police; therefore, as their resistance was justified it cannot become the basis for their convictions for aggravated assault. This syllogism, although facially appealing, is fatally flawed. The appeal of this argument lies within the validity of the first premise; however, for the reasons more thoroughly set forth hereinafter, the secondary premise and thus, the conclusion are invalid.

We must begin our discussion of these cases by examining the charges for resisting arrest brought against Biagini and Barry W. The heart of the defendants' argument is that the resisting arrest charge cannot be legally sustained, as an essential element of the offense, a lawful arrest, cannot be proven by the Commonwealth. In essence, the defendants contest the sufficiency of the evidence. The time honored standard for reviewing a claim of insufficiency of the evidence was well stated in *Commonwealth v. Burton,* 450 Pa. 532, 534, 301 A.2d 599, 600 (1973):

> As we have repeatedly said the test in determining if the evidence is sufficient to sustain a criminal conviction is, whether accepting as true all of the evidence of the Commonwealth, and all reasonable inferences arising therefrom, upon which the jury could properly have reached its verdict, was it sufficient in law to prove beyond a reasonable doubt that the appellant was guilty of the crime of which he stands convicted.

7. For the purpose of this opinion we do not find it necessary to address the additional charges levied against Biagini.

32

■ The crime at issue is resisting arrest. In applying the above standard to the cases at issue we first look at the elements of resisting arrest as set forth within the Crimes Code at 18 Pa.C.S. § 5104:

> A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a *lawful arrest* or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance. (emphasis supplied).

In the cases at bar, the only element under consideration is the lawfulness of the arrest. The language of the statute is quite clear and unambiguous; in order to be convicted of resisting arrest, the underlying *arrest* must be lawful. *See, Commonwealth v. Karl*, 328 Pa.Super. 97, 476 A.2d 908 (1984). A determination of the lawfulness of the underlying arrest necessitates a legal conclusion that the arresting officer acted with authority and probable cause. *See, Commonwealth v. Stortecky*, 238 Pa.Super. 117, 352 A.2d 491 (1975).

■ The Superior Court, after thoroughly reviewing both cases, concluded that the police lacked the necessary probable cause to effectuate a lawful arrest of either Biagini or Barry W. In the *Biagini* case, the Superior Court concluded that Biagini had committed no action which justified his immediate apprehension. *Commonwealth v. Biagini*, 428 Pa.Super. 634, 627 A.2d 199 (1993) (Refusing to cooperate with the officer's investigation while employing loud and vulgar terms when standing on his own porch did not justify arresting Biagini for public drunkenness or disorderly conduct). In the matter of *Barry W.*, the Superior Court found no reasonable cause for the officer to pursue the defendant based on a vague anonymous tip, even though the defendant fled when approached by the police. Upon review of the well-reasoned opinions of the Superior Court in both cases, we accept the legal conclusion that no probable cause existed for either arrest. Accordingly, as the underlying arrest in *Biagini* and *Barry W.* was unlawful, as each arrest was effectuated in the absence of probable

cause, one of the essential elements of the crime of resisting arrest was not established. The conviction of Biagini for resisting arrest must be reversed and the order reversing the conviction of Barry W. for resisting arrest must be affirmed.

Thus, the initial premise of the defendants' syllogism is valid; therefore, we now turn to the secondary premise: since the underlying arrest was unlawful their resistance was justified.

 At this point in their argument the defendants are attempting to shift the responsibility for their act of physical resistance to the officers themselves for initiating the encounter which precipitated the physical act of resistance.[8] Contrary to the assertion of the defendants, the finding of an unlawful arrest does not justify the actions of Biagini and Barry W. in physically resisting Officer Snyder and Officer Boran. The determination that a police officer placed an individual under arrest without probable cause is a legal determination; it is an issue to be resolved in a courtroom, not on a street corner. Within a civilized society rules exist to resolve disputes in an orderly and peaceful manner. Physical resistance to a police officer is not only counter-productive to the orderly resolution of controversy, but it is also specifically prohibited by statute. 18 Pa.C.S. § 505(b)(1)(i). (The use of force is not justifiable to resist an arrest which the actor knows is being made by a peace officer, although the arrest is unlawful). Therefore, defendants' secondary premise, that an unlawful arrest justifies physical resistance, is invalid.

As the secondary premise in this syllogism is invalid, the conclusion flowing therefrom is also invalid. The defendants want us to focus upon the initial actions of the police officers as a catalyst for all that flowed therefrom. The defendants argue that since the initial encounter was an "unlawful arrest," all the criminal charges which arose as a consequence of that arrest should be dismissed. However, as stated, the defendants were not justified in physically resisting an unlawful

8. Put in layman's terms: "if the officer hadn't tried to arrest me I never would have hit him."

arrest. Therefore, they cannot avoid the consequences of their actions in resisting/assaulting the officers.

In setting forth their conclusion the defendants make two fatal errors. First, the lawfulness of the arrest is irrelevant to the charge of aggravated assault; and second, in asserting that the physical assaults at issue were justified responses to an illegal arrest, the defendants have misinterpreted our recent decision in *Commonwealth v. French*, 531 Pa. 42, 611 A.2d 175 (1992).

The first part of the defendants' argument is, once again, an attack on the sufficiency of the evidence. *See, Commonwealth v. Burton*. As in our review of the previous sufficiency argument, we again turn to the elements of the crime charged in order to ascertain whether or not the Commonwealth has met its burden of proof.

The charges of aggravated assault at issue were brought under subsection (a)(3) of the statute at 18 Pa.C.S. § 2702 which reads:

(a) **Offense defined.**—A person is guilty of aggravated assault if he:

(3) attempts to cause or intentionally or knowingly causes bodily injury to a police officer, firefighter or county adult probation or parole officer, county juvenile probation or parole officer or an agent of the Pennsylvania Board of Probation and Parole *in the performance of duty;* (emphasis supplied).

For the narrow purposes of determining whether a person has committed aggravated assault, if the police effectuate an arrest and the arrestee physically resists the officer, and subsequently the arrest is deemed to be without probable cause, nevertheless, the arrestee is guilty of aggravated assault because the officer was within the "performance of duty" when effectuating the arrest. In 1986 the legislature amended 18 Pa.C.S. § 2702(a)(3) and substituted the words "making or attempting to make a lawful arrest" with the phrase "in the performance of duty." This change broadened the scope of the statute, evidencing an intent to protect officers when

effectuating all arrests, even those which are subsequently determined to have lacked probable cause at their inception. *See also* 18 Pa.C.S. § 505(b)(1)(i).

■ Thus, a lawful arrest is not an element of the crime charged. In order to sustain the convictions for aggravated assault, the Commonwealth must establish that Officer Snyder and Officer Boran suffered bodily injury as a result of the intentional actions of the defendants, while the officers were "in the performance of their duty." Turning to the facts of the cases at bar, we conclude that the Commonwealth has met its respective burdens as to both Biagini and Barry W.

Officer Snyder was investigating a disturbance in a residential neighborhood when he encountered Biagini, a matter clearly within the scope of the officer's duty. During the course of that investigation Biagini intentionally caused physical injury to Officer Snyder. Thus, sufficient evidence was introduced from which the fact-finder could justifiably conclude that Biagini committed the crime of aggravated assault.

Officer Boran was responding to a radio call regarding criminal activity at a specific location. When she arrived at the stated location she observed the defendant and another individual being pursued by a police officer. Officer Boran joined in the chase. When she attempted to physically apprehend Barry W., Barry W. intentionally pushed Officer Boran into a parked car causing her to suffer physical injury. Officer Boran was within the proper scope of her duty as an officer when she was injured. As in the case of Biagini, sufficient evidence was produced from which the fact-finder could reasonably conclude Barry W. had committed the crime of aggravated assault.

The final aspect of the defendants' argument turns on their interpretation of this Court's recent opinion in *French*. The defendants want to use *French* as a shield absolving them of responsibility for their actions. They argue that their use of force in resisting an unlawful arrest was a justifiable response to the police officers' use of force in placing them under arrest. In addition to arguing that *French* provides blanket protection

to those who resist an unlawful arrest, the defendants make specific claims as to the nature and extent of the force used in their individual cases.

Biagini argues that Officer Snyder used excessive force in effectuating the arrest, thus Biagini was merely responding to that force in an effort to protect himself. Barry W. asserts alternative arguments; first, that he offered no real resistance, that Officer Boran's injury was out of proportion to minor resistance on his part; and second, that *French* was published after his trial and he was unable to develop sufficient facts revealing his overwhelming fear of the officer which explains his resistance.

█ We cannot state it any more clearly: there does not exist in Pennsylvania a right to resist arrest, under any circumstances. The lawfulness of the arrest must be decided after the fact and appropriate sanctions imposed in a later judicial setting. Contrary to the position of the defendants herein, the opinion in *French* never touched upon the issue of resisting arrest when the arrestee thinks the police officer is acting without probable cause. What was at issue in *French* was the distinction between resisting arrest and the right of self-defense which would allow an individual to protect him/herself in the extreme situation where the arresting officer uses force which is so excessive that it will result in death or serious bodily harm. *Id.* 531 Pa. at 48, 611 A.2d at 178. When the Court in *French* made reference to unlawful conduct on part of the police, the reference was to the unlawful use of excessive/deadly force in making the arrest, and not to the unlawfulness or lack of probable cause for the arrest.[9]

The defendant in *French* never contested the legality of her arrest. Rather, she argued that her attack on the Officer was justified in an effort to stop him from using excessive force in placing her boyfriend under arrest. The Court in *French* was

9. In using the adjective "excessive" when referencing the improper amount of force used by a police officer, we mean the amount of force which would cause serious bodily injury, not just an amount of force that is more than necessary to effectuate the specific arrest at issue.

attempting to clarify that fine line between resisting arrest and self-defense.

> [A]n arrestee's use of force in self protection is justified when the arrestee reasonably believes that such force is immediately necessary to protect against an arresting officer's use of unlawful and deadly force, i.e., force which is readily capable of causing death or serious bodily injury. An arresting officer's use of excessive force capable of causing less than serious bodily injury or death can be vindicated by recourse to subsequent legal remedies.

*French*, 531 Pa. at 50, 611 A.2d at 179. Thus, *French* reaffirms the proposition that there is no justification for resisting arrest; the only circumstance under which the law will contemplate physical resistance to a police officer is when the officer unnecessarily uses unlawfully excessive or deadly force which triggers the right of self-defense. The focus in *French* was not whether the underlying arrest was based on probable cause, but rather whether the officers' use of force in effectuating a lawful arrest was itself, unlawful. A police officer may only use the amount of force which is necessary to accomplish the arrest. 18 Pa.C.S. § 508(a)(1).[10]

The decision in *French* does not shield Biagini and Barry W. from being accountable for their conduct in resisting/assaulting Officer Snyder and Officer Boran regardless of the "lawfulness" of the underlying arrest. *French* is limited to ex-

---

10. 18 Pa.C.S. § 508. **Use of force in law enforcement**
 (a) **Peace officer's use of force in making arrest.—**
 (1) A peace officer, or any person whom he has summoned or directed to assist him, need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. He is justified in the use of any force which he believes to be necessary to defend himself or another from bodily harm while making the arrest. However, he is justified in using deadly force only when he believes that such force is necessary to prevent death or serious bodily injury to himself or such other person, or when he believes both that:
 (i) such force is necessary to prevent the arrest from being defeated by resistance or escape; and
 (ii) the person to be arrested has committed or attempted a forcible felony or is attempting to escape and possesses a deadly weapon, or otherwise indicates that he will endanger human life or inflict serious bodily injury unless arrested without delay.

38

treme situations where a police officer unlawfully uses an excessive or deadly amount of force in effectuating an arrest. Having reaffirmed our holding in *French* we now turn to the final aspect of these two cases, whether or not excessive force was used by Officer Snyder and Officer Boran in arresting Biagini and Barry W.

In the Biagini case it was argued to the trial court that the force used by officer Snyder was excessive. In particular Biagini complained of the use of a stun gun to stop him while he was wrestling with the officer. The trial court found as a matter of fact that the force used was only that necessary to effectuate the arrest. The Superior Court affirmed that factual conclusion and we find no abuse of discretion or error of law which would require a different result. *Commonwealth v. Medley*, 531 Pa. 279, 612 A.2d 430 (1992). Accordingly the conviction for aggravated assault is affirmed.

Barry W. argues that his case should be remanded to the trial court in order to develop a record that would adequately demonstrate his overwhelming fear of Officer Boran. A remand is unnecessary. At trial Barry W. argued that he offered very little resistance in his struggle with Officer Boran, and that if she had not cut her hand, no assault charges would have resulted. In light of the record that exists, any testimony relating to Barry W.'s subjective fear would not support a finding that he needed to defend himself against excessive or deadly force being used by Officer Boran. The adjudication of delinquency based upon the finding that Barry W. committed aggravated assault is affirmed.

## CONCLUSION

In conclusion we reiterate, although a "lawful" arrest is an essential element necessary to sustain a conviction for resisting arrest, a determination that the arrest was "unlawful" will never serve as justification for the act of resistance. *French* does not, per se, justify "resistance" to arrest. The holding of *French* is limited to those rare instances when an arrestee reasonably believes it necessary to defend him/herself against

the unnecessary use of unlawfully excessive or deadly force by the arresting officer.

As to the appeal of Biagini, we reverse only that part of the Order of the Superior Court which affirmed the conviction for resisting arrest. We affirm the remaining portion of the Superior Court Order which affirmed the conviction for aggravated assault and reversed the convictions for disorderly conduct, public drunkenness, prohibited offensive weapons and possession of a small amount of marijuana. Accordingly, the judgment of sentence is vacated and the matter is remanded to the trial court for the imposition of sentence consistent with this opinion.

In the matter of Barry W. the Order of the Superior Court which vacated the determination of guilt as to resisting arrest and affirmed the adjudication of delinquency on the finding of guilt as to the charge of aggravated assault is affirmed.

Jurisdiction is relinquished.

ZAPPALA, J., concurs in the result.

PAPADAKOS, J., files a dissenting opinion in which CASTILLE, J., joins.

MONTEMURO, J., is sitting by designation.

PAPADAKOS, Justice, dissenting.

In the matter of *Biagini,* the defendant was convicted of resisting arrest. The facts are not in dispute that the defendant was preventing a public servant (the police officer) from discharging a duty—the investigation of a public disturbance. The definition of resisting arrest is clear and unambiguous. Under the Crimes Code, 18 Pa.C.S. § 5104, resisting arrest is defined as:

A person commits a misdemeanor of the second degree if, *with the intent of preventing a public servant from* effecting a lawful arrest or *discharging any other duty,* the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or

requiring substantial force to overcome the resistance. (emphasis added).

The majority ignores the element of preventing the discharge of any other duty (i.e., the investigation of a public disturbance) and concentrates on the element of lawful arrest. That is not the issue in this case. The issue is whether the defendants were resisting arrest by interfering in the police officer's investigation of the public disturbance and not resisting a *lawful* arrest. If so, they are guilty of violating Section 5104. That's how the statute is written and that's how we should apply it.

In *Biagini* and *Barry W.*, I would affirm the Superior Court.

CASTILLE, J., joins this Dissenting Opinion.