# Commonwealth v. Harris

*Pete Hook,* for Commonwealth.
*Paul Gettleman,* for defendant.

LESKINEN, *J.,* February 1, 2008—

## ORDER AND OPINION

AND NOW, February 1, 2008, upon consideration of the defendant's omnibus pretrial motion filed on September 22, 2006, the hearing held on November 22, 2006 on the said motion; the arguments and authorities thereafter submitted by counsel; and based on recent appellate court decisions, this court hereby finds that the defendant's motion must be denied, for all of the reasons set forth below.

The defendant is charged with two counts of aggravated assault and various drug charges, arising from a series of related incidents that occurred on October 7,

2005. On that date, Robert Kelly, an agent for the attorney general's "Strike Force 5" team was conducting a pre-planned systematic stop of all vehicles entering, stopping for any conversation, and then leaving the Fort Mason Village Housing Projects in Masontown, a known area of high crime and drug activity. Fort Mason Village is infamous locally as a "drive-through supermarket" for the sale of illegal drugs. Agent Kelly viewed the defendant stopping his car and making contact with two males loitering outside. (Of course, the race of the participants is irrelevant. What is relevant is the specific transaction occurring in a high crime, high drug area. *Commonwealth v. Shaw,* 76 D.&C.4th 430 (2005).) Mid-level drug dealers operating out of their cars to check on "inventory" and deliver smaller quantities of illegal drugs to their team of street-level dealers would be virtually immune from detection and prosecution in the absence of specifically tailored police tactics such as were used here.

After Harris left the housing project, Agent Kelly had a waiting "take down" team pull his car over on nearby Route 21. One of the officers that pulled over the car, Officer Kaminsky, noticed what appeared to be "crack" cocaine crumbs on the lap of the Defendant. (Omnibus pretrial transcript, pp. 58-61.) It was established that Kaminsky had enough experience to make a reliable observation in that regard. (N.T., pp. 54-55.) Harris denied being a drug dealer or user, but gave permission for the vehicle to be searched. Officer Standish found a pair of pants with approximately $2,500 in cash in the back seat, and after consulting superior officers, Kaminsky and Standish asked Harris to get out of the car. Harris

was then to be transported to the station for further questioning.

As Harris was being readied for transport outside of the car, he started an altercation with the officers and attempted to escape. Against the commands of the attending officers, the defendant reentered his car. Kaminsky tried to stop him, but Harris resisted and drove away from the scene with Officer Kaminsky dangerously hanging out of the open car door. Kaminsky believed Harris was trying to reach for a gun. Harris attempted to kick Officer Kaminsky free from the car while it was moving, and simultaneously reached into the glove box and threw drugs and drug paraphernalia out of the car window. The vehicle eventually came to rest at a "jersey" barrier, at which point Harris continued to assault Officer Kaminsky. After Kaminsky and the other officers subdued Harris, the cocaine and drug paraphernalia were recovered from the vehicle's path where Harris had thrown them.

In his motion to suppress, Harris argues that the stop was illegal, and that everything that occurred thereafter must be suppressed. Based on such suppression, Harris argues that all charges must be dismissed.

It is true that a seizure for Fourth Amendment purposes occurs whenever a person is physically detained or submits to an order to stop. *Florida v. Bostick,* 111 S.Ct. 2382 (1981). A person is in custody when he is "physically denied his freedom of action" or he is placed in a situation where he reasonably believes his freedom of movement is restricted. *Commonwealth v. Johnson,* 556 Pa. 218, 727 A.2d 1089 (1999).

Normally, a vehicular stop must be supported by probable cause. An exception to the requirement of probable cause occurs when a vehicle is subjected to a valid "road-block" or systematic stop. *Illinois v. Lidster,* 540 U.S. 419, 124 S.Ct. 885, 157 L.Ed.2d 843 (2004); *Commonwealth v. Beaman,* 583 Pa. 636, 880 A.2d 578 (2005). Individualized suspicion is not an absolute requirement for a valid stop, provided that the systematic stop meets constitutional requirements. *Id.* While systematic stops occur most frequently in the context of drunk driving checkpoints, such stops are not limited to traffic violations. It would certainly be absurd to suggest that vehicles could be stopped to check for a drunk driver, but cannot be stopped to check for a terrorist carrying a bomb. (In this instance, twenty grams of crack cocaine could originate uncountable secondary crimes and community destruction similar to the effect of a bomb.)

In order to determine whether the stop was constitutionally reasonable in the instant case, this court must weigh the gravity of the public concerns to be served by the systematic stop, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty. *Id.*

This court finds that the infamous open-air drug market at Fort Mason Village was a matter of the most grave public concern. The systematic stop of all vehicles traveling into, stopping briefly, and then traveling out of that illegal drug haven very obviously advanced the public interest—in this case alone resulting in the seizure of more than 20 grams of cocaine and the interdiction of a significant mid-level dealer distributing that societal

poison. Although the stop ultimately may result in a substantial interference with Harris's individual liberty, by contrast, the impact on a law-abiding motorist subjected to the same stop would have been very brief and minor.

It is only because Harris had apparent drug residue in plain view on his lap, had an inexplicable amount of small denomination cash, only because he disobeyed the commands he was given, and only because he then willfully endangered the life and health of the officers; that he is now facing serious legal consequences.

After balancing the above constitutionally-dictated factors, this court finds that the record contains enough evidence and testimony to justify the systematic stop at issue here. Agent Kelly, at the time of this incident, had been employed in his present capacity on the drug task force for more than 16 years, and he had direct knowledge that Fort Mason Village was a center of drug activity. *Commonwealth v. Cook,* 558 Pa. 50, 735 A.2d 673 (1999). The police are not required to ignore relevant characteristics of location in determining whether circumstances are sufficiently suspicious to warrant further investigation. *Illinois v. Wardlow,* 528 U.S. 119 (2000). Reasonable suspicion for a stop is justified when the defendant was in an area known for drug activity, and exchanges characteristic of a drug deal take place. *Commonwealth v. Pizarro,* 723 A.2d 675 (Pa. Super. 1998). The Pennsylvania Superior Court case of *Commonwealth v. Wells,* 916 A.2d 1192 (Pa. Super. 2007) involves somewhat similar facts. The totality of the circumstances must be taken into account "through the eyes of a trained

police officer." See also, *Commonwealth v. Stroud,* 699 A.2d 1305 (Pa. Super. 1997).

Furthermore, the standard to stop is met if "the police officer's reasonable and articulable belief that criminal activity is afoot [is] linked with observation." *Commonwealth v. Espada,* 364 Pa. Super. 604, 609, 528 A.2d 968, 970 (1987).

The objective of the police tactic that night was to stop every car that went through Fort Mason Village with only a brief pause for conversation or other transactions. The defendant's car was one of four cars that the Strike Force team attempted to stop. The fact that two of the cars evaded being stopped, and the fact that the systematic stop program necessarily ended early after Harris assaulted Officers Kaminsky and Standish, does not affect the validity of the two stops that were made.

Once Officer Kaminsky lawfully observed crumbs of what appeared to be "crack" cocaine in the defendant's lap, he had good reason to continue the investigation. *Commonwealth v. Milyak,* 508 Pa. 2, 493 A.2d 1346 (1985); see also, *Commonwealth v. Clinton,* 905 A.2d 1026 (Pa. Super. 2006). Likewise, once the unusually high amount of small-denomination cash was found, further investigation was prudent. At that point it can be considered an open question whether or not the police had sufficient probable cause to arrest Harris. The reason that question can remain open is that it is essentially irrelevant to what then occurred.

If the defendant had submitted to further questioning at the station, in all likelihood he would have been questioned and then released. If the police had searched his

car further—without his consent—at that point, he could argue that the results of that search should be suppressed. It is only because he refused the commands of the officers and engaged in illegal assaultive conduct towards them, that his drugs and drug paraphernalia were ultimately disclosed.

While the court does not believe that Harris was arrested illegally, he had no right to resist even an illegal arrest. *Commonwealth v. Jackson,* 592 Pa. 232, 924 A.2d 618 (2007); *Commonwealth v. Biagini,* 540 Pa. 22, 655 A.2d 492 (1995); *Commonwealth v. Britt,* 456 Pa. Super. 633, 691 A.2d 494 (1997). As noted in *Jackson,* supra:

"The initial illegality does not give the arrestee a free pass to commit new offenses without responsibility. Neither does that initial illegality 'poison the tree,' preventing lawful police conduct thereafter—the new crimes are new trees, planted by [the arrestee], and the fruit that grows from them is not automatically tainted by the initial lack of probable cause." 592 Pa. at 237, 924 A.2d at 621.

In this case, all crimes for which Harris is currently being prosecuted occurred (or were discovered) at (and after) the time he assaulted Officers Kaminsky and Standish. We cannot condone his attack by allowing him to benefit from it. The right to be free from illegal searches and seizures is a shield, and not a sword.

Accordingly, the defendant's omnibus pretrial motions are all denied.