J-S92009-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KATHY JO COOK, | |
| Appellant | No. 234 WDA 2016 |

Appeal from the Judgment of Sentence October 15, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0004927-2015

BEFORE:  SHOGAN, MOULTON, and STRASSBURGER,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED FEBRUARY 9, 2017**

Appellant, Kathy Jo Cook, appeals from the judgment of sentence entered following her convictions of resisting arrest, disorderly conduct, and public drunkenness.  We affirm in part, reverse in part, vacate the judgment of sentence, and remand for resentencing.

The trial court summarized the facts of this case as follows:

> On April 6, 2015, Officer William Mudron, (hereinafter referred to as "Mudron"), responded to a call of a neighborhood disturbance at 2221 Boustead Street in the City of Pittsburg[h].  Mudron responded with his partner, Officer Luff, (hereinafter referred to as "Luff"), and met with Stephen and David Link, who were the residents at that address.  This was the second time within an hour that the Officers had been called to respond to a disturbance at that location.  In meeting with David and Stephen Link, the Officers were informed that their next door neighbor,

---

[*]  Retired Senior Judge assigned to the Superior Court.

[Kathy Jo] Cook [("Appellant")], trespassed onto their property and was exposing herself. While the Officers were taking the information from the Links, [Appellant] was standing on her porch on her property yelling repeatedly. The Officers asked her to calm down and she refused.

After speaking with the Links, Mudron went to [Appellant's] property, walked up the staircase and then met her on a very small porch which was no more than four by four, outside her front door. Mudron told her that he had to speak with the individual who was in her residence and she told him to get off of her porch and that he needed an "F***ing warrant". [Appellant] attempted to push Mudron down the steps and she grabbed ahold of his uniform. Mudron told her to let go of his uniform and she refused and he then grabbed her hands and pushed her back against a storm door. She went through the glass panel of the storm door and then came back at Mudron and he had to grab ahold of her hands again and he told her to get on the ground which she refused. He then attempted to get her hands behind her back and she continued to battle him to the point that he believed that it was necessary to use his Taser on her. After tasing her the first time, he told her to get her hands behind her back, however she put them underneath her body. He gave her a second tasing at which time Luff was able to handcuff her.

Throughout this entire incident, [Appellant] was irritable and very volatile. Mudron also noted that she was highly intoxicated, that she had extremely slurred speech and a very strong odor of an alcoholic beverage. This was confirmed by the fact that [Appellant] admitted to them that prior to their arrival she had seven to eight beers.

Trial Court Opinion, 8/2/16, at unnumbered 1-3.

The procedural history of this case was summarized as follows:

On October 15, 2015, following a non-jury trial, [Appellant] was found guilty of the charges of resisting arrest, disorderly conduct and public intoxication. On that date, [Appellant] was sentenced to a period of probation of six months, during which she was to have an alcohol evaluation performed by the Probation Office. [Appellant] filed post-sentence motions and a hearing was held on those motions on

February 9, 2016, after which hearing, said motions were denied. [Appellant] then filed a timely appeal to the Superior Court and was directed pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), to file a concise statement of matters complained of on appeal. In that statement she has maintained that not only was the evidence insufficient to support the verdicts rendered in her case, but also, that the verdicts were against the weight of the evidence.

Trial Court Opinion, 8/2/16, at unnumbered 1.

Appellant presents the following issues for our review:

I.  Whether the evidence presented in this matter was legally insufficient to sustain Appellant's conviction of the crimes of resisting arrest, disorderly conduct, and public drunkenness.

II. Whether the Judge's verdict was against the weight of the evidence.

Appellant's Brief at 5 (full capitalization omitted).

In her first issue, Appellant argues that the evidence of record was insufficient to sustain convictions for the charges of resisting arrest, disorderly conduct, and public drunkenness. Appellant's Brief at 12. Our standard of review is well-established:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder['s]. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of

- 3 -

proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Estepp***, 17 A.3d 939, 943-944 (Pa. Super. 2011).

With regard to the resisting arrest charge, Appellant asserts that the evidence is insufficient to convict her because she was not preventing Officer Mudron from discharging a duty or conducting a lawful arrest. Appellant's Brief at 19-21. Appellant contends that there was no lawful arrest to be made based on her behavior. ***Id.*** at 13.

The crime of resisting arrest is defined in the Crimes Code as follows:

**§ 5104. Resisting arrest or other law enforcement**

A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

18 Pa.C.S. § 5104.

In addressing the sufficiency of evidence supporting this conviction, the trial court provided the following analysis:

When Mudron arrived on the scene and attempted to talk with the Links, [Appellant] was being boisterous and unruly and would not honor Mudron's demand to be quiet even though he told her he would talk to her after he had met with the Links. Once he did meet with her she displayed an aggressive behavior towards him, grabbing his uniform and attempting to push him off of a four by four porch, down a steep staircase to the street,

- 4 -

which was more than fifteen feet above the street. Even after [Mudron] had disengaged himself from [Appellant], she ran at him a second time and grabbed him and refused his commands to get down on the porch and it was necessary for him to tase her not once but twice. It is abundantly clear that all of the elements of that particular offense were proven beyond a reasonable doubt by the Commonwealth.

Trial Court Opinion, 8/2/16, at unnumbered 5.

The evidence supports the conclusion that, with the intent to prevent Officer Mudron from discharging his law enforcement duty and effectuating a lawful arrest, Appellant, by her actions, created a substantial risk of bodily injury to Officer Mudron and herself. Additionally, as a result of her noncompliance with Officer Mudron's directives, Officer Mudron was required to use substantial force to overcome her resistance. Thus, we agree with the trial court's conclusion that, viewing the evidence in the light most favorable to the Commonwealth, there was sufficient evidence supporting Appellant's conviction for resisting arrest.

Appellant also argues that the evidence is insufficient to convict her of disorderly conduct because, as she asserts, she did not engage in violent or tumultuous behavior. Appellant's Brief at 18. She further maintains that she did not intend to cause substantial harm or a serious inconvenience when she "asked" Officer Mudron to leave, and as a result, the misdemeanor enhancement to the disorderly conduct charge was improper. *Id.*

Disorderly conduct is defined, in relevant part, as follows:

**(a) Offense defined.**--A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

> (1) engages in fighting or threatening, or in violent or tumultuous behavior;

* * *

**(b) Grading.**--An offense under this section is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a summary offense.

18 Pa.C.S. § 5503(a)(1) and (b).

Viewing the evidence in the light most favorable to the Commonwealth, the evidence presented at trial supports the conclusion that Appellant engaged in violent and tumultuous behavior. Officer Mudron testified that when he responded to the complaint, Appellant was on her property yelling repeatedly. N.T., 10/15/15, at 9. When Officer Mudron proceeded to Appellant's property to further investigate the complaint, Appellant confronted Officer Mudron, asserting that he was not permitted on her property. *Id.* at 10. Officer Mudron testified to the following physical interaction with Appellant as he ascended the steps to the porch of Appellant's property:

> As I began to incline the steps to the front porch, as soon as I stepped onto the top porch area, she turned -- basically looked right at me, said you need an F'ing warrant, and stepped into me with both her hands extended. She grabbed a hold of the front side of my uniform and tried to push me back down the steps.

* * *

- 6 -

At that time, I moved to my right, putting the railing that you were asking about in between me and the concrete patio floor. At that time, I grabbed a hold of her hands as I was turning to the right, and I told her to let go, and she told me no. She just flat out said no. So at that point, I grabbed a hold of her hands, and I pushed her back into the screen door of her house.

*Id.* at 12-13. Officer Mudron explained that after Appellant went through the screen door, she hit the interior door and "came back at [him]." *Id.* at 14. Appellant grabbed hold of Officer Mudron again. *Id.* Appellant refused to comply with Officer Mudron's directives to get on the ground, and as a result, Officer Mudron tried to restrain her. *Id.* Appellant continued to struggle, forcing Officer Mudron to tase Appellant. *Id.* at 14-15. Officer Mudron described Appellant's behavior throughout the interaction as "volatile." *Id.* at 15.

Although Appellant testified that she simply talked to the Officer and "reflectively [sic] touch[ed]" him in an attempt to defend herself, N.T., 10/15/15, at 35-36, the trial court did not find Appellant's version of events to be credible. Thus, viewing the evidence of record in the light most favorable to the Commonwealth, we conclude that there is sufficient evidence to establish that Appellant engaged in fighting and in threatening, violent, and tumultuous behavior. Accordingly, the evidence is sufficient to sustain Appellant's conviction for disorderly conduct. Moreover, because Appellant persisted in disorderly conduct after Officer Mudron's request that

she desist, application of the misdemeanor grading is appropriate. 18 Pa.C.S. § 5503(b).

Finally, with regard to the conviction for public drunkenness, Appellant argues that the offense requires that a defendant appear in any "public place manifestly under the influence of alcohol or a controlled substance." Appellant's Brief at 13. Appellant contends that she cannot be found guilty of public drunkenness because she was on her own porch, which is not a "public place" under the statute. *Id.* at 14-15.

The Crimes Code defines the offense of public drunkenness, in relevant part, as follows: "A person is guilty of a summary offense if he appears in any public place manifestly under the influence of alcohol or a controlled substance." 18 Pa.C.S. § 5505. Section 5505 does not define the term "public." However, in **Commonwealth v. Meyer**, 431 A.2d 287 (Pa. Super. 1981), this Court observed that:

> [t]he term does appear, however, in two places in the Crimes Code: in the section dealing with prostitution, section 5902, and in the section dealing with disorderly conduct, section 5503. Section 5902(f) defines it as "any place to which the public or any substantial group thereof has access." The ordinary meaning of "access" is: "the right to enter or make use of;" "the state or quality of being easy to enter."
>
> Section 5503(c) defines public places as, *inter alia*, "any premises which are open to the public."

**Meyer**, 431 A.2d at 289 (footnotes omitted). More specifically, section 5503(c) provides as follows:

As used in this section the word "public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public.

18 Pa.C.S. § 5503(c).

In **Meyer**, this Court deemed the evidence insufficient to establish the "public" element of public drunkenness where the altercation took place at a V.F.W. Post, a private club to which the public did not have access. **Meyer**, 431 A.2d at 289. In **Commonwealth v. Biagini**, 655 A.2d 492, 497 (Pa. 1995), the Supreme Court confirmed this Court's conclusion that an appellant's use of loud and vulgar terms when standing on his own porch did not justify arresting the appellant for public drunkenness. The **Biagini** Court explained that the appellant did not appear in any public place under the influence of alcohol or a controlled substance. **Id.** at 495. However, we note that in comparison, this Court in **Commonwealth v. Whritenour,** 751 A.2d 687 (Pa. Super. 2016), concluded that the "public" element of public drunkenness was established where the evidence established that appellant was in the middle of a road while intoxicated, even though the road was in a private community. We explained that the road was public as it was traversed by members of the community and their invitees or licensees. **Id.** at 688.

Turning to the case before us, the evidence establishes that Appellant was visibly intoxicated during the events of that evening. N.T., 10/15/15, at

15-16. Appellant conceded that she had been drinking throughout the day prior to this incident. *Id.* at 40. Moreover, Appellant does not contest that she was "manifestly under the influence of alcohol or a controlled substance," but asserts that she did not appear so in a "public place." Appellant's Brief at 15. Therefore, the determinative question is whether Appellant was in a "public place."

Our review of the record, in a light most favorable to the Commonwealth, reveals the following with regard to the establishment of the "public" element of the public drunkenness charge. 18 Pa.C.S. § 5505. Officer Mudron testified that when he responded to the complaint, Appellant was yelling at the Links and Officer Mudron from her front porch. N.T., Trial, at 9. Furthermore, the altercation with Officer Mudron took place on Appellant's front porch. *Id.* at 10-15. Because the Commonwealth has not presented evidence establishing the contrary, we deem the porch to be on Appellant's private property. Thus, we are constrained to conclude that the Commonwealth's evidence regarding Appellant's conduct while on her porch was insufficient to establish the "public" element of the public drunkenness statute and reverse that conviction. *Meyer*, 431 A.2d at 289; *Biagini*, 655 A.2d at 497.

In her second issue, Appellant argues that the convictions are against the weight of the evidence. Appellant's Brief at 23. Appellant asserts that the trial judge's verdict improperly relied upon the insufficient evidence

admitted by the Commonwealth. *Id.* Furthermore, Appellant contends that the verdict was based only on Officer Mudron's "incredulous testimony regarding the incident" that was inconsistent with Appellant's and defense witness Allison McCurry's testimony. *Id.* at 23-24. Appellant maintains that "the guilty verdict imposed by the judge was so contrary to the evidence that any reasonable person's sense of justice, including that of the court, would be appalled by such a miscarriage of justice." *Id.* at 24. Appellant seeks a new trial. *Id.* at 24-25.

The law pertaining to weight-of-the-evidence claims is well settled. The weight of the evidence is a matter exclusively for the fact finder, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. *Commonwealth v. Forbes*, 867 A.2d 1268, 1272–1273 (Pa. Super. 2005). The grant of a new trial is not warranted because of "a mere conflict in the testimony" and must have a stronger foundation than a reassessment of the credibility of witnesses. *Commonwealth v. Bruce*, 916 A.2d 657, 665 (Pa. Super. 2007). Rather, the role of the trial judge is to determine that, notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. *Id.* An appellate court's purview:

> is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review

- 11 -

of the underlying question of whether the verdict is against the
weight of the evidence.

*Commonwealth v. Knox*, 50 A.3d 732, 738 (Pa. Super. 2012) (internal
citations omitted). "[T]he trial court's denial of a motion for a new trial
based on a weight of the evidence claim is the least assailable of its rulings."
*Commonwealth v. Diggs*, 949 A.2d 873, 879–880 (Pa. 2008).

Here, the trial judge sitting as the finder of fact was free to believe all,
part, or none of the evidence against Appellant. The trial court weighed the
evidence and concluded that Appellant was guilty of resisting arrest,
disorderly conduct, and public drunkenness. As explained, we agree with
the trial court's conclusion that there was sufficient evidence presented at
trial to sustain the convictions of resisting arrest and disorderly conduct.[1]
Despite Appellant's rendition of the events contradicting Officer Mudron's
testimony, the trial court did not find Appellant's version of the events to be
credible. Based upon the evidence presented, the trial court's determination
on those two convictions is not an abuse of discretion. Thus, we decline
Appellant's invitation to assume the role of fact finder and to reweigh the
evidence. Appellant's second claim lacks merit.

In conclusion, we affirm the resisting arrest and disorderly conduct
convictions and reverse Appellant's conviction for public drunkenness.

_____

[1] Our conclusion that the Commonwealth failed to present sufficient evidence
to sustain the public drunkenness conviction was based on the
Commonwealth's failure to establish the "public" element of that offense.

Because vacating Appellant's sentence for public drunkenness may disrupt the trial court's overall sentencing scheme, we vacate her judgment of sentence in its entirety and remand for resentencing. *See Commonwealth v. Barton–Martin*, 5 A.3d 363, 370 (Pa. Super. 2010) (providing that where vacating a sentence disrupts a trial court's overall sentencing scheme, this Court will remand to the trial court for resentencing).

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/9/2017