**COMMONWEALTH of Pennsylvania**

v.

**Ruth Ann WERTELET, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 6, 1997.

Filed June 25, 1997.

Ruth A. Wertelet, appellant, in pro. per.

Francis Schultz, Asst. Dist. Atty., Meadville, for Com., appellee.

Before McEWEN, President Judge, and CAVANAUGH and BROSKY, JJ.

BROSKY, Judge.

This is an appeal from a judgment of sentence imposed upon appellant after she was convicted of aggravated assault, resisting arrest and harassment. Appellant raises one general question, whether the Commonwealth failed to present sufficient evidence to sustain the convictions for aggravated assault and resisting arrest? We reverse and remand.

Appellant's conviction stemmed from an incident which occurred on December 13, 1993. Appellant was embroiled in a dispute with the local telephone service provider, Alltell, over a right-of-way or easement for the placement of underground telephone wires on her property. Earlier in the year appellant and her husband had wished to build a pole barn on their property and began preparations to do so. Appellant called Alltell and the gas company in April to request that they come out to the property to mark the location of the telephone wires and gas pipes. The gas company promptly came out and put flags in the ground to designate their pipes but appellant received no response from Alltell. According to appellant, after several more telephone calls Alltell eventually responded that they didn't have any lines on appellant's property. Appellant's husband then began construction of the barn in June of 1993. During some digging for the barn phone lines were cut. After appellant alerted Alltell of the incident an Alltell crew came out to the property to repair the lines. Appellant had some concern about the presence of the telephone lines because she had been led to believe that there weren't any on her property. She told the Alltell people that they could splice the lines together but that they could not bury them. She further indicated that she wanted to talk to someone about the presence of the lines. The Alltell workers indicated that someone would contact her about the lines shortly. However, as of December 13, 1993, appellant had not been contacted by Alltell in reference to the lines.

In the meantime appellant reviewed the right-of-way agreement and noticed that it had been signed by only one of her parents from whom she had inherited the property. Since her parents were married and had owned the property by the entireties at the time of the execution of the right-of-way agreement appellant developed the opinion that a valid right-of-way had not passed as the signature of both her parents would have been necessary to pass good title. On December 13, 1993, an Alltell supervisor, Clarence Dine, contacted appellant to set up a meeting to see if they could get the wires permanently buried. Mr. Dine had been informed that the property owner had been denying Alltell permission to enter the property to fix the lines. A meeting was set up for December 20th.

After speaking with appellant Mr. Dine called appellant's sister-in-law, Theresa Linz, who lives near appellant, to see if he could meet with her on the 20th also. Ms. Linz's telephone service is provided by the lines which went across appellant's property and Mr. Dine wanted to meet with all parties affected by the situation. While Mr. Dine was speaking with Ms. Linz the line went dead. Based upon the sound the disconnection made Mr. Dine developed an opinion that the line had been cut. Mr. Dine then proceeded to appellant's property with another supervisor, Dale Beers, to inspect the wires and found them disconnected or "cut"

in the vicinity of appellant's barn; a spot where they had been spliced before. Appellant then appeared and told Mr. Dine that he had no right to be there and ordered him off the property. Appellant also allegedly threatened to shoot them if they did not leave. Mr. Dine and Mr. Beers left the Wertelet property and reported the incident to their supervisor who consulted an attorney for his opinion on the validity of the right-of-way agreement. The attorney, Andy Bacallao, examined the document and opined that Alltell had a valid right-of-way. He then called appellant and attempted to inform her that Alltell had a valid right-of-way. Appellant reportedly acknowledged the existence of the document but, nevertheless, threatened to shoot anyone who came upon her property.

Having been told that Alltell had a valid right-of-way, Mr. Dine alerted the Pennsylvania State Police of appellant's threats and requested police assistance to bury the lines. Two state troopers accompanied an Alltell crew to appellant's property where, upon finding appellant absent, the crew began digging a ditch to bury the wires. Appellant returned shortly after the crew began work. The troopers, noticing appellant driving up the road, blocked her vehicle's access to the property. Appellant parked the vehicle and walked onto her property in the area of the workers. Appellant told the workers and the troopers that they were trespassing and ordered them off the property. The workers responded that they had a valid right-of-way and asked appellant to stop interfering with their work. Appellant then grabbed a garden rake and began pushing dirt into the ditch. The troopers interceded at that point and tried to take appellant's rake which she refused to give up. They then attempted to place her under arrest. Appellant resisted

initial attempts to be placed in custody by struggling with the officers and kicking one of the troopers, Trooper Funk, in the shin area twice. The troopers were then successful in handcuffing her and she was arrested and charged with a variety of offenses including aggravated assault, simple assault, resisting arrest, and disorderly conduct.

Appellant was tried in a combination bench and jury trial in September 1994, the court found appellant guilty of harassment but not guilty of criminal mischief, both summary offenses. The jury returned guilty verdicts on the aggravated assault, resisting arrest and disorderly conduct charges and a not guilty verdict on a charge of simple assault. Appellant was sentenced and took a direct appeal to this court. Upon consideration of appellant's appeal, we remanded the case back to the trial court to allow a hearing to determine whether appellant had been informed by her counsel of her right to testify. *Commonwealth v. Wertelet*, 446 Pa.Super. 352, 666 A.2d 1087 (1995). Upon remand a hearing was held after which appellant was awarded a new trial. A retrial was held on June 11, 1996, in which appellant represented herself. At the close of all testimony appellant made an oral motion for judgment of acquittal. The court granted the motion as to disorderly conduct and denied it as to the resisting arrest charge. The order is silent as to the aggravated assault charge.[1] Appellant was sentenced for a second time and once again filed a direct appeal.

Appellant argues that her conviction for resisting arrest cannot stand because, among other things, her arrest was unlawful.[2] We agree. In *Commonwealth v. Biagini*, 540 Pa. 22, 655 A.2d 492 (1995), our Supreme Court reaffirmed the proposition that the

---

1. The court comments in its opinion that appellant made a motion for judgment of acquittal only as to the disorderly conduct and resisting arrest charges. It seems somewhat strange that appellant would not have also moved for an acquittal on the aggravated assault charges. However, this portion of the trial was not transcribed and we must assume that appellant did not move for judgment of acquittal as to the aggravated assault charge.

2. The Commonwealth argues that appellant waived her challenges to the sufficiency of the evidence for failing to preserve them below. We note that under Pennsylvania Rule of Criminal Procedure 1124(a)(7), a challenge to the sufficiency of the evidence can be made for the first time on appeal. See (explanatory comment following rule as well.) Additionally, one can challenge the sufficiency of the evidence by motion for judgment of acquittal at the close of all evidence, which appellant made orally, at least as to the resisting arrest charge. See, footnote 1.

underlying arrest must be "lawful" in order for a charge of resisting arrest to be sustained. More importantly, in *Biagini* the determination that the arrest was unlawful resulted from an after the fact conclusion by this court on appeal that the conduct supporting the arrest did not constitute the crimes charged, *i.e.*, was lacking in probable cause; it was not based upon the perspective of whether the police officers acted in good faith and believed a crime had been committed at the time of arrest.

■ Interestingly, almost all of the charges leveled against appellant emanate from her physical resistance to arrest. It is not as if she had committed a felony or even a misdemeanor and then when apprehended she resisted being placed in custody. Rather, and particularly if one believes in one's right to protect his/her property from trespassers, the situation here would be more similar to one where police approached someone at a corner who had done nothing wrong and told him he was under arrest and then charged him with resisting arrest, and only resisting arrest, when he offered physical resistance. Here, other than the innocuous "disorderly conduct" charge, which was found unsustainable at trial[3], appellant did nothing to justify her arrest until the troopers attempted to arrest her.[4] This is almost an exact replaying of *Biagini*.[5]

In *Biagini*, a police officer investigating some loud shouting at 3:00 A.M. encountered Biagini in the rear of his yard. When asked about the disturbance Biagini responded there was no problem but also pointed at two individuals across the alley. The officer instructed Biagini to remain where he was while he questioned the other two individuals. However, Biagini went inside his house instead. When the officer returned he saw Biagini entering his house. The officer went to the door and began knocking on it. Biagini responded by yelling "who the [expletive] is tearing down my door." The officer asked Biagini to come outside and answer a few questions. Biagini then refused and, in vulgar terms, ordered the officer off his porch. Biagini was then arrested for disorderly conduct and public intoxication. On appeal we concluded that Biagini's conduct did not constitute the crimes for which he was charged and this conclusion was accepted by our Supreme Court. *See, Commonwealth v. Biagini*, 540 Pa. 22, 31–33, 655 A.2d 492, 497 (1995).

We agree with the trial court that the validity of the right-of-way is a matter beyond the scope of the criminal proceedings. But we disagree with the court's apparent belief that the possession of that piece of paper entitled Alltell to pursue a forceful and nonconsensual entry onto appellant's proper-

---

3. Appellant was charged with disorderly conduct for pushing dirt into the ditch and swinging a rake around in the vicinity of the workers. However, appellant's motion for judgment of acquittal was granted as to this offense as well.

4. Appellant was charged with criminal mischief for allegedly pulling apart the telephone wires, but was found not guilty of that offense as well. Further, that offense is a summary offense and would not require an arrest in the first place. *See*, 42 Pa.C.S.A. § 8902. Additionally, as suggested by Judge Cervine of this court in his concurring opinion to appellant's first appeal, appellant would seem to have been justified in using some force to expel trespassers from her property. *See*, concurring opinion by Cervine, J., *Commonwealth v. Wertelet*, 446 Pa. Super. 352, 666 A.2d 1087, 1090 (1995).

5. The dissent argues that the police had probable cause to make an arrest, however, the dissent does not indicate for what offense probable cause existed. At the time the police intervened appellant was on her own property, ranting, possibly swearing and waving a rake around. The only

offense appellant was charged with which related to events occurring pre-arrest was disorderly conduct, 18 Pa.C.S.A. § 5503, which requires intent to cause **public** inconvenience, annoyance or alarm. Not only was appellant on her own property, she lives in a rural setting. Consequently, her actions could not cause public inconvenience, annoyance or alarm and the charge was properly dismissed at trial.

Despite any inference the dissent's argument might create, *Biagini* did not focus on some form of generalized "probable cause" to arrest. That decision refers to the crimes actually charged and concluded that the police officer was not justified in arresting for those offenses. The facts in Biagini are really quite similar. Both cases involved an individual who was on his/her own land and showed a significant lack of respect for police authority. However, in Biagini the confrontational attitude was found to be an insufficient basis for executing a lawful arrest for public drunkenness or disorderly conduct. The same is true here.

ty in the face of appellant's voiced opposition. Appellant had informed Alltell that she considered the right-of-way invalid and she also informed the state troopers of this opinion as well. Furthermore, she informed both the workers and the state troopers that she considered their presence on her property to be a trespass. Given that appellant had contested Alltell's right to enter her property Alltell's actions were the equivalent of extremely reckless self-help remedies that invited the confrontation that, in fact, resulted. The appropriate response would have been to either contractually settle the matter with appellant and her husband or to seek some form of equitable order from the court such as an injunction, temporary restraining order or declaratory judgment. In any event, we conclude, as did the court in *Biagini*, that there was not a lawful underlying arrest to which appellant resisted. Consequently, the evidence is insufficient to sustain the conviction of resisting arrest.

■ Turning to the conviction for aggravated assault, although a lawful arrest is an essential element of the crime of resisting arrest, *Biagini* makes clear that the same is not true as to an aggravated assault of a police officer. Further, *Biagini* indicates that one does not have a right to resist arrest and a finding of an "unlawful arrest" will not act as an affirmative defense to a charge of assaulting a police officer. Stated alternatively, although a finding that an arrest was unlawful will defeat a charge of resisting arrest it will not defeat a charge of aggravated assault under 18 Pa.C.S.A. § 2702(a)(3), nor will it provide immunity for any other offense that is committed in the process of resisting arrest. In this case appellant was convicted of harassment and aggravated assault, both charges emanating from her resisting arrest, and she cannot rely upon the unlawfulness of the arrest to defeat those charges.

Nevertheless, appellant also levels a challenge to her conviction for aggravated assault in the form of an argument that Trooper Funk did not sustain a "bodily injury" within the meaning of the Crimes Code. Aggravated assault of a police officer occurs if a person "attempts to cause or intentionally or knowingly causes *bodily injury* to a police officer, ..." 18 Pa.C.S. § 2702(a)(3). The testimony of Trooper Funk was that as appellant struggled while the troopers attempted to handcuff her he was "kicked" by appellant's right heel twice in the left shin. Trooper Funk, although stating that the pain he experienced from the "kicks" was "substantial," in a more descriptive moment testified that the pain was "similar to bumping your shin on a coffee table in the dark when you're walking through the house." (Trial T. p. 62.) Trooper Funk did not require any medical treatment for the "injury" and was able to perform his duties for the remainder of the shift. Appellant argues that her "kicking" did not inflict a "bodily injury" for purposes of the elements of the crime.[6] We agree.

The term "bodily injury" is defined at 18 Pa.C.S.A. § 2301 as "impairment of physical condition or substantial pain." However, the definition is worded rather generally and does not provide a great deal of guidance. Furthermore, there is surprisingly few cases that attempt to define the term. Although not necessarily controlling, the connotation of bodily injury, a sort of common person understanding of the term, suggests a physical event unlike those commonly occurring in normal life which, although unpleasant and somewhat painful, do not seriously interrupt one's daily life. Thus, if one cuts oneself shaving the average person does not think that he has suffered an injury even though such an event could be accompanied by some pain and bloodshed. Similarly, if one stubbed a toe or dropped something on it, even though it could elicit a fair amount of pain and might even result in some limping and the ultimate loss of a toenail, one would not think of himself as "injured." The same

6. It is notable, although somewhat paradoxical, that appellant was acquitted of simple assault in her first trial. It is notable because one is guilty of simple assault if one "intentionally, knowingly or recklessly causes *bodily injury* to another; ..." 18 Pa.C.S.A. § 2701(a)(1). *Emphasis added.* Logically speaking, a simple assault against a police officer in the performance of his duty constitutes a violation of § 2702(a)(3). Thus, the acquittal on simple assault is inconsistent with the guilty verdict for aggravated assault.

could be said if one bumped an elbow against the wall or one's head on a low ceiling beam.

The above point seems to be at the center of the decision in *Commonwealth v. Kirkwood*, 360 Pa.Super. 270, 520 A.2d 451 (1987), and, although *Kirkwood* does not deal with an incident involving a police officer, it seems to give the above argument a great deal of credence. In *Kirkwood* a more thorough discussion on the term bodily injury is conducted, but ultimately we stated that "the assault section of the Crimes Code was intended to protect and preserve one's physical well being and was not intended to prevent temporary hurts resulting from trivial contacts which are a customary part of modern day living." *Id.*, 520 A.2d at 454. We then quoted from an earlier case which, although dealing with incidents between siblings, states quite appropriately "it is difficult to attach criminality to the pushing, shoving, slapping, elbowing, hair-pulling, perhaps even punching and kicking, that frequently occur between siblings or other members of the same family." Quoting from *Interest of J.L,* 327 Pa.Super. 175, 178, 475 A.2d 156, 157 (1984).

A valuable attribute of the *Kirkwood* decision is its willingness to look at the term realistically and commonsensibly rather than give it its most far-reaching interpretation. Another valuable attribute of *Kirkwood* is to define the term, and therefore the crime, in the context of other crimes. *Kirkwood* recognizes that there are other criminal provisions which were promulgated to deal with such behavior in a more realistic fashion. Consequently, it noted that physical affronts that do not result in "bodily injury," and therefore do not constitute a simple assault, would likely be addressable under the summary offense of harassment which specifically includes conduct where the actor "strikes, shoves, kicks or otherwise subjects him to physical contact, ..." 18 Pa.C.S.A. § 2709(1). This point should not be lost here.

In the context of dealing with an individual who provides physical resistance to arrest there are several possible crimes which might be committed in the process, the most obvious of which would be the crime of resisting arrest. Although a physical struggle or altercation with a police officer is not the only means by which one can commit the crime of resisting arrest, it certainly is contemplated within the definition of the crime. One commits resisting arrest if one "employs means justifying or requiring substantial force to overcome the resistance." 18 Pa. C.S.A. § 5104. Examples of "means" which would undoubtedly satisfy the Code by requiring substantial force to overcome would be any kind of significant physical resistance, including punching, shoving, squirming, biting or kicking.

It is not disputed that physical resistance can be severe enough to satisfy the elements of a more serious offense, *i.e.,* aggravated assault. However, there is really no justification apart from overzealousness to apply the section so as to subsume the crime of resisting arrest and/or other lesser offenses. The natural implication of having a provision for resisting arrest and aggravated assault of a police officer is to differentiate criminal conduct according to its severity and provide appropriate punishment for that conduct. However, an equally natural and logical implication of having a provision for resisting arrest and aggravated assault of a police officer is the recognition that they are not one in the same thing. That is, that there are physical acts of resistance which do not rise to the level of an aggravated assault. If appellant's conduct is considered to be an aggravated assault it is difficult to imagine an instance of resisting arrest which will not also be an aggravated assault as almost all acts of resisting arrest are likely to involve some physical resistance which will cause an officer some physical pain or discomfort. Further, as the name of the offense implies, *aggravated* assaults are assaults of a rather serious nature.

An aggravated assault of someone not provided greater protection under the statute, *i.e.,* under § 2702(a)(1), requires an attempt to cause, or the actual causation of, *serious bodily injury.* Serious bodily injury is one which creates a *substantial risk of death* or serious permanent disfigurement or physical impairment. Although there was undoubtedly an intent on the part of the legislature to provide police officers who are performing

their duties greater protection under the statute than a layperson, it does not follow that the elimination of the qualifier "serious" from the serious bodily injury element [7] was meant to depreciate the severity of the offense to a point where it encompasses relatively harmless physical contact with a police officer. Rather, logic and reason suggest that such conduct was meant to be dealt with under the resisting arrest, harassment and possibly simple assault offenses.[8]

The above philosophy was fully embraced by the Court of Common Pleas of Centre County in *Commonwealth v. Rowlands*, 22 Pa. D. & C. 4th 86 (1993). In *Rowlands* a confrontation between a campus police officer, David Jordan, and a drunken Jason Rowlands resulted in the defendant swearing at Officer Jordan and then striking or shoving Jordan in the chest in an openhanded manner with sufficient force to cause Jordan to lose his balance. Rowlands further resisted arrest by swinging his arms wildly about. Later the day of the incident Officer Jordan went to the hospital because of pain in the calf area of his leg. Rowlands was charged with aggravated assault and, after a preliminary hearing, was bound over to court on that charge. Rowlands responded by filing a writ of habeas corpus arguing that the Commonwealth had not established a *prima facie* case. The court reviewed the evidence and agreed that the Commonwealth had not presented a *prima facie* case of aggravated assault because the evidence did not establish that Officer Jordan had sustained a "bodily injury" within the meaning of § 2702.

In concluding that Officer Jordan had not sustained a bodily injury for purposes of aggravated assault the court looked to the *Kirkwood* case and, as this court also did in *Kirkwood,* to various New York decisions, as the usage of the term bodily injury in the Pennsylvania Crimes Code was modeled after the Crimes Code of New York. *See,* discussion in *Kirkwood,* 360 Pa.Super. 270, 272–74, 520 A.2d 451, 453 (1987). The court found support for its conclusion in cases like *In re Philip A.,* 49 N.Y.2d 198, 424 N.Y.S.2d 418, 400 N.E.2d 358 (1980), which found that "petty slaps, kicks and shoves delivered out of hostility, meanness and similar motives" do not constitute an assault of the third degree, an offense which also requires the infliction of a "bodily injury." The New York court concluded that a red mark on a face accompanied with swelling, which was caused by being stricken in the face twice and which made the juvenile victim cry, was not a bodily injury, *id.* Also, in an earlier decision a New York court made a similar conclusion regarding a blackened eye that lacked more serious complications. *People v. McDowell,* 28 N.Y.2d 373, 321 N.Y.S.2d 894, 270 N.E.2d 716 (1971).

We believe the above examples are on par with the nature of the affront committed here by appellant. There is no evidence that appellant reared back and kicked Trooper Funk as hard as she could. Indeed, she kicked him with the back of her heel as she was flailing about and squirming while the troopers attempted to handcuff her.[9] Trooper Funk was not seriously impaired by the kicks, he was able to continue working, and he did not report even any bruising or swelling. Trooper Funk's characterization of the pain as similar to "bumping your shin on a

---

7. Note that an aggravated assault against a police officer can also be found where the actor intends to cause or causes serious bodily injury as well. 18 Pa.C.S.A. § 2702(a)(2). When this subsection is satisfied it is graded as a second degree felony as opposed to first degree misdemeanor.

8. Although we mentioned in footnote 5 that, logically speaking, a simple assault committed against a police officer in the performance of his duties would satisfy the elements of § 2702(a)(3), it may provide a more palatable alternative for dealing with a less serious physical confrontation with a police officer than charging for aggravated assault. Such a practice would not seem to

be unprecedented as an individual who reared back and punched a police officer in the face hard enough to break his glasses and cause him to stumble down a flight of steps was apparently charged with only simple assault in *Commonwealth v. Richardson,* 431 Pa.Super. 496, 636 A.2d 1195 (1994). There is no indication that the defendant in *Richardson* was charged with aggravated assault even though it would seem the evidence was clearly sufficient to satisfy the elements of § 2702(a)(3).

9. Compare appellant's actions with that of the defendant in *Richardson, supra,* who reared back and punched a police officer directly in the face.

coffee table" aligns the encounter with those described above and does not fall within the general connotation of the term "injury." Further, it hardly seems consistent with the concept of an *aggravated* assault, an assault of a severe nature, but does seem to fall neatly into the general concept of resisting arrest, harassment or, possibly, simple assault. For all the above reasons we believe the evidence was insufficient to prove that Trooper Funk experienced a "bodily injury" within the meaning of the statute. Consequently, the evidence was insufficient to sustain the conviction for aggravated assault.[10]

For the above reasons, appellant's convictions for resisting arrest and aggravated assault are reversed and the judgment of sentence is vacated. We will remand for resentencing on the harassment charge. Jurisdiction relinquished.

CAVANAUGH, J. files a dissenting opinion.

CAVANAUGH, Judge, dissenting.

Because my review of the record reveals that the Commonwealth produced sufficient evidence to establish each element of the offenses of resisting arrest and aggravated assault, I respectfully dissent.

With respect to the resisting arrest conviction, the majority concludes that this conviction cannot stand because the arrest of appellant was unlawful. It cites *Commonwealth v. Biagini*, 540 Pa. 22, 655 A.2d 492 (1995) for the proposition that the lawfulness of an arrest is made from an after-the-fact determination of whether the conduct supporting the arrest constituted the crime(s) charged.

While I agree that *Biagini* holds that a conviction for resisting arrest will only stand where the underlying arrest is lawful, I disagree that the lawfulness of the arrest is to be determined from an after-the-fact examination of a defendant's conduct. The legality of any arrest is subject to review and this

review will take place, of necessity, some time after the arrest has occurred. This fact alone does not authorize the court to consider facts unknown to police or to disregard facts erroneously believed by them in good faith to be true. *Biagini* clearly states that "a determination of the lawfulness of the underlying arrest necessitates a legal conclusion that the arresting officer acted with authority and probable cause." *Id.* at 32, 655 A.2d at 497. Probable cause for a warrantless arrest exists if the facts and circumstances *within the knowledge of the police officer at the time of the arrest* are sufficient to justify a person of reasonable caution in believing the suspect has committed or is committing a crime. *Commonwealth v. Quiles*, 422 Pa.Super. 153, 166–67, 619 A.2d 291, 298 (1993)(emphasis added). In determining whether probable cause existed for a warrantless arrest in a particular situation, a court will look not just at one or two individual factors, but will consider the *"totality of the circumstances" as they appeared to the arresting officer. Id.* (emphasis added).

In *Biagini*, the supreme court concluded that no probable cause existed to support defendant's arrest because he committed no action which justified his immediate apprehension. Defendant's actions consisted of nothing more than refusing to cooperate with a police officer's investigation and the use of loud and vulgar language while standing on his own porch. Such actions would not justify a person of reasonable caution in believing that defendant had committed or was in the process of committing a crime.

Here, unlike *Biagini*, appellant's conduct would justify a person of reasonable caution in believing that she was in the process of committing a crime. Two state troopers accompanied an Alltell crew to appellant's property. The crew was attempting to bury telephone lines pursuant to a right-of-way which Alltell possessed across appellant's property. The troopers were made aware of

---

10. Our opinion should not be read as excusing or condoning appellant's conduct. Appellant's actions were confrontational, unreasonably excessive and unjustifiable. Nevertheless, a fair assessment of her conduct requires the conclusion that her actions were not "felonious." We have simply attempted to apply the law in a fair and intellectually honest manner. This leads us to the conclusion that Trooper Funk did not suffer a "bodily injury" in either a common sense or legal meaning of the term. Therefore, the charge of aggravated assault cannot stand.

these circumstances and possessed a good faith belief that Alltell was acting within its rights. When appellant physically interfered with the Alltell work and continued to act disruptiveness, despite requests to desist from both the crew and the troopers, the troopers possessed the necessary probable cause to effectuate a lawful arrest.

With respect to the offense of aggravated assault, the majority concludes that this conviction cannot stand because the trooper whom she kicked did not sustain "bodily injury." It cites *Commonwealth v. Kirkwood,* 360 Pa.Super. 270, 520 A.2d 451 (1987) for the proposition that bodily injury does not encompass temporary hurts or pains brought about by trivial contacts. *Kirkwood* involved a situation in which the victim received barely discernible injuries from her partner during a "fast dance" at a tavern. This type of *de minimus* injury resulting from a trivial infraction is not what took place in the present case. Here, appellant was struggling with two state troopers as they attempted to place her under arrest. During this melee, appellant kicked one of the troopers twice in the leg. The trooper described the pain as "similar to bumping your shin on a coffee table in the dark when you're walking through your house." The trooper qualified this description by stating the pain he experienced was substantial and that it lasted for the rest of his shift. Viewing this evidence, as we must, in the light most favorable to the Commonwealth as verdict winner, I would conclude that there was sufficient evidence to establish that the trooper suffered bodily injury as a result of being kicked by appellant. *Cc. Biagini, supra* (defendant guilty of aggravated assault where officer suffered bodily injury when punched in mouth by defendant); *Commonwealth v. Barry W.,* 540 Pa. 22, 655 A.2d 492 (1995) (conviction for aggravated assault upheld where officer suffered bodily injury when pushed into parked car by defendant).

Because my review of the record and pertinent caselaw reveals that the Commonwealth produced sufficient evidence to establish each element of the crimes of resisting arrest and aggravated assault, I would affirm the judgment of sentence.