J-A25032-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHRISTOPHER ROSS HECKER, | |
| Appellant | No. 23 MDA 2016 |

Appeal from the Judgment of Sentence December 17, 2015
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0000373-2015

BEFORE: FORD ELLIOTT, P.J.E., SHOGAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED DECEMBER 28, 2016**

Christopher Ross Hecker ("Appellant") appeals from the judgment of sentence entered by the Court of Common Pleas of Centre County after a jury convicted him on one count each of Aggravated Assault—Attempt to Cause Bodily Injury, 18 Pa.C.S.A. § 2702(a)(3), and Simple Assault—Bodily Injury Attempted, 18 Pa.C.S.A. § 2701(a)(1)for his actions in punching a prison guard who was serving him a cup of water. The court likewise found Appellant guilty of summary Harassment, 18 Pa.C.S.A. § 2709(a)(1). Sentenced to a standard guideline range sentence of three to twelve months' incarceration for Aggravated Assault, with which his convictions of Simple Assault and Harassment merged for purposes of sentencing, Appellant raises

_____

*Former Justice specially assigned to the Superior Court.

a challenge to the sufficiency of evidence offered to support his Aggravated Assault conviction. We affirm.

We glean the pertinent facts of the case from the notes of testimony taken at Appellant's November 16, 2015, jury trial. On January 20, 2015, Corrections Officer Jonathan Ayers was working the 11:00 p.m. to 7:00 a.m. shift at the Centre County Correctional Facility and was assigned to the housing unit where Appellant's suicide watch cell was located. N.T., 11/16/15, at 57. Among CO Ayers' duties that night was to offer a cup of water every hour to Appellant because the prison turned off the water supply to the cell toilet and sink in response to Appellant's recent misconduct.[1] N.T., at 57, 58. At approximately 3:00 a.m., CO Ayers provided Appellant a cup of water, flushed the cell toilet by use of a mechanism outside the cell, and went to get Appellant a second cup of water by request. N.T., at 58.

When CO Ayers returned, he opened the "food pass"[2] lid to its horizontal position, set the cup of water on it, and stood to the side about two inches away. A six inch wide by thirty-six inch tall window located just above the food pass allowed Ayers to watch as Appellant approached, and

---

[1] The prison policy of "water restriction" is intended to promote the safety of both prisoner and correction officer. To prevent dehydration and any other acute health risk due to lack of water, however, the policy mandates that staff check on the inmate's water needs every hour. N.T. at 38-39.

[2] The "food pass" is a six-and-one-half inch tall by sixteen inch wide opening in the cell door through which items such as food and drink may be delivered to the inmate. The food pass itself has a door of the same size that opens downward and stops at a perpendicular angle to the exterior side of the cell door, forming a shelf on which to place items. N.T., at 46-48.

that is when Appellant delivered a punch through the food pass opening, landing on the inside of Ayers' upper right thigh, near his genitals. N.T. at 58-59, 70. The punch hurt Ayers, and he felt its painful effects for the rest of the night, though there was no resultant redness, bruising, or swelling in the area. N.T., at 59, 69. When Ayers asked why Appellant punched him, Appellant replied only that Ayers "could go fuck [himself]." N.T., at 60. Ayers was able to finish his shift without seeking medical staff, but he did complete an incident report and waited to receive a responsive phone call from a state trooper. N.T. at 70.

Testifying in his own defense, Appellant denied making contact with Ayers' leg when he deliberately knocked over the water cup. N.T., at 80-82. On cross-examination, he testified that he never bent down as he approached the food pass, which is what would have been required to make contact with Ayers since the food pass was only twenty-eight inches above the floor N.T. at 86-87. The prosecutor challenged this testimony by replaying a video of the event as taken by a camera mounted within Appellants' cell,[3] but Appellant maintained that it was physically impossible for him to have reached his arm some thirteen-and-one-half inches through

---

[3] Incorporated in the certified record on appeal, the video depicts Appellant walking away from the camera and toward the cell door, where his body obscures a view of the food pass. However, from the perspective of the camera, one sees Appellant bending forward as he reaches the door, extending his right arm into the food pass, and briefly thrusting forward while rotating his body counter-clockwise in a motion consistent with delivering a quick jab before he withdraws his arm and returns to his bed empty-handed.

the opening[4] and made contact with Ayer. N.T. at 85-86. "The part – I didn't reach – the part of the body that I reached through the food pass was the amount of maybe a half an inch, maybe a half an inch of fingertips, not knuckles[,]" Appellant maintained. N.T. at 86. The following exchange then took place:

> **PROSECUTOR:** And you're bent over in this video; is that correct?
>
> **APPELLANT:** I mean, to a certain degree, yes.
>
> **Q:** And this is about the moment you put your arm through the food pass?
>
> **A:** I never put my arm through the food pass. I absolutely never put my arm through the food pass.
>
> **Q:** So when you testified on direct examination that your knees weren't bent, that was a lie?
>
> **A:** My knee is not bent. I mean, it's bent to the back, but I wasn't leaning through the food pass.

N.T., at 86-87.

As noted *supra*, the jury convicted Appellant on one count of Aggravated Assault of an Enumerated Person, 18 Pa.C.S.A. § 2702(a)(3), and one count of Simple Assault, while the trial court convicted Appellant of one count of summary Harassment, 18 Pa.C.S.A. § 2709(a)(1). On

---

[4] The thirteen-and-one-half inch estimate takes into account the thickness of the padded door, plus the six inches the food pass lid protruded outward in its horizontal position, plus the two inches CO Ayers said he stood beyond the food pass lid.

December 17, 2015, the court sentenced Appellant to three to twelve months' incarceration. This timely appeal followed.

Appellant presents the following questions for our consideration:

DID THE FACT FINDER LACK SUFFICIENT EVIDENCE FROM WHICH TO CONCLUDE THAT DEFENDANT'S ACT OF SLAPPING A DIXIE CUP OF WATER OFF THE LEDGE OF HIS CELL PIE HOLE CAUSED OR WAS A MANIFESTATION OF AN ATTEMPT TO CAUSE SUBSTANTIAL PAIN OR IMPAIRMENT OF THE PHYSICAL CONDITION OF A CORRECTIONS OFFICER GIVEN THE LACK OF ABILITY OF DEFENDANT TO OBSERVE WHERE THE CORRECTIONS OFFICER WAS EVEN STANDING GIVEN THE LIGHTING CONDITIONS AND THE PLACEMENT OF THE CELL WINDOW AND PIE HOLE?

Appellant's brief at 4.

Appellant contends the evidence proved only that he slapped the cup of water onto CO Ayers as part of a series of annoying and harassing behaviors he had exhibited toward officers since he arrived at the Centre County Correctional Facility. If he made any direct contact at all with Ayers' leg, Appellant argues, it was "at best a mere petty slap" that neither reflected the intent nor involved the kind of injury necessary to bring his conduct within the ambit of the Aggravated Assault of Enumerated Persons statute. We disagree.

Our standard of review is well-settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and

circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Brooks***, 7 A.3d 852, 856–57 (Pa.Super. 2010) (quotation omitted).

Aggravated Assault at Section 2702(a)(3) provides that "A person is guilty of aggravated assault if he. . . attempts to cause or intentionally or knowingly causes bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c), in the performance of duty[.] Subsection 2702(c)(9) includes an "[o]fficer or employee of a correctional institution, county jail or prison" as an enumerated person for purposes of the statute. 18 Pa.C.S.A. § 2301 defines "bodily injury" as "impairment of physical condition or substantial pain."

[I]n a prosecution for aggravated assault on an officer[,] the Commonwealth has no obligation to establish that the officer actually suffered a bodily injury; rather, the Commonwealth must establish only an attempt to inflict bodily injury, and this intent may be shown by circumstances which reasonably suggest that [an appellant] intended to cause injury.

***Commonwealth v. Rahman***, 75 A.3d 497, 502 (Pa.Super. 2013) (quotation marks, quotation, and emphasis omitted).

Appellant is correct when he observes that our jurisprudence has declined to include all pain-inducing events suffered by police officers or other enumerated persons under Section 2702(a)(3)'s ambit. In this regard, Appellant places great reliance on ***Commonwealth v. Wertelet***, 696 A.2d 206 (Pa. Super. 1997), in which a panel majority held that two heel strikes to a state trooper's shin delivered by a flailing arrestee who was interfering with utility workers "right of way" work on her property was insufficient to support a Section 2702(a)(3) conviction.

In ***Wertelet***, the trooper testified that he experienced "substantial" pain from the contact, but later described the pain in more detail as "similar to bumping your shin on a coffee table in the dark when you're walking through the house." ***Id.*** at 210. The majority held, however, that the evidence did not suggest defendant "reared back and kicked [the trooper] as hard as she could," as the strikes occurred while she was "flailing about and squirming while the troopers attempted to handcuff her" from behind. ***Id.*** at 212-13.

Ultimately, the majority concluded that "evidence was insufficient to prove that Trooper Funk experienced a "bodily injury" within the meaning of the statute[,]" ***id.*** at 213, without specifically addressing whether evidence was also lacking with respect to an attempt to injure. Nevertheless, its observation that there was an absence of evidence suggesting defendant made a calculated effort to deliver a forceful blow to the shins not only bore

- 7 -

on the extent of the trooper's injury but also may have implied that proof of an attempt was missing.

In contrast to the evidence in **Wertelet**, the video recording of Appellant intentionally jabbing his arm through the food pass coupled with CO Ayers' testimony that Appellant delivered a painful punch to the inside of his upper thigh, just missing his genitals, was sufficient to establish an attempt to cause injury for purposes of the statute. As noted *supra*, it was the Commonwealth's burden to establish only an attempt to inflict bodily injury, and such intent "may be shown by circumstances which reasonably suggest that a defendant intended to cause injury." **Rahman**, **supra**; **Commonwealth v. Brown**, 23 A.3d 544, 560 (Pa.Super. 2011).

Evidence established, without dispute, that the food pass was twenty-eight inches above the floor and Ayers was standing just two inches beyond the opening. As such, it is a reasonable inference that Appellant directed his punch at the CO's genitals in an attempt to cause him bodily injury. Indeed, Ayers testified that Appellant's punch just missed his genitals but still carried enough force to cause him pain for the remaining four hours of his shift. Had this punch landed in the more sensitive area of the CO's body, it was quite likely he would have experienced considerably more pain and injury. Moreover, Appellant's belligerent and profane words directed at Ayers after the punch only reinforce the inference of a statutory attempt.

Accordingly, we hold that Appellant's punch directed at this area of Ayer's body amounted to an attempt to cause bodily injury under Section

2702(a)(3), regardless of whether Ayers actually sustained a bodily injury from the punch as landed.

Judgment of sentence is AFFIRMED.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/28/2016