J-S29029-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTHANIA ADENIRAN | : | |
| | : | |
| Appellant | : | No. 2463 EDA 2018 |

Appeal from the Judgment of Sentence Entered July 13, 2018
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0006375-2017

BEFORE: BENDER, P.J.E., LAZARUS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY LAZARUS, J.:                    **FILED JUNE 24, 2019**

Anthania Adeniran appeals from the judgment of sentence, entered in

the Court of Common Pleas of Delaware County, after she was convicted,

following a non-jury trial, of the summary offenses of simple assault (M2)[1]

and disorderly conduct (M3).[2]  After careful review, we affirm in part and

reverse in part.

The trial court aptly summarized the facts of the case as follows:

> At about 6:00 a.m. on September 4, 2017[,] Officer [Thomas]
> Takacs of the Darby Borough Police Department responded to a
> motor vehicle stop that took place about a quarter of a mile from
> the Darby Borough police station.  [Adeniran] was a passenger in
> the vehicle that was stopped.  [Adeniran] asked for a ride from
> the location of the stop to the police station, a safe place, where
> she would call for a ride.  As a courtesy[,] Officer Takacs

_____

[1] 18 Pa.C.S. § 2701(a)(1).

[2] 18 Pa.C.S. § 5503(a)(4).

transported [Adeniran] and the transport was "without incident." At the police station, [Adeniran] entered a "vestibule." The entry into the police station proper was closed at the time and the door would remain locked until 8:00 a.m. Members of the public seeking assistance before 8:00 a.m. access officers in the building by using a red telephone located next to the front door. Officers respond[ing] to those calls, meet the individual at the door and provide them access to the station. [Adeniran] was smoking a cigarette and she repeatedly tried to enter the police station, insisting that she needed to charge her cell phone. She was informed that there was a receptacle located outside the building and it was available to her for that purpose.

[Adeniran] was under the influence of alcohol. For ten to fifteen minutes she refused to leave the vestibule[,] although she was informed that she would not be allowed in the police station to charge her phone. When [Adeniran] refused to leave[,] she was arrested for disorderly conduct and public drunkenness.

[Adeniran] was taken into custody. She was handcuffed and brought into the police station to be processed. About fifteen to twenty minutes passed. During that period, Officer Takacs, with the assistance of Officer Desiree Forlini, attempted to get relevant information from [Adeniran]. [Adeniran] was then advised that she was going to be housed in a cell to give her an opportunity to sober up. She was asked several times to remove her shoes and jewelry as a safety precaution before entering the cell. [Adeniran] refused to comply with the officers' requests and she became disruptive and combative. She kicked Officer Forlini. With the assistance of two additional officers[,] Officer Forlini eventually removed [Adeniran's] boots. Officer Forlini asked [Adeniran] to remove her jewelry and explained that it would be held in a secure police locker. [Adeniran] would not take the jewelry off[,] but she allowed Officer Forlini to remove her earrings. When Officer Forlini attempted to remove her watch[, [Adeniran] resisted, telling the officer that she was "doing it wrong" and she dug her nails into the officer's wrists. Officer Forklini [sic] testified that she felt substantial pain and that she had to back away from [Adeniran]. Officer Forlini did not seek medical attention[,] but testified that marks were left on her wrist where [Adeniran] dug her nails into the [o]fficer's wrist, near her veins. Commonwealth's Exhibit C-2 showed bruising on the area that Officer Forlini described.

As she was moved into a cell[, Adeniran] was completely uncooperative, swinging the handcuff that was attached to one

- 2 -

arm at the officers. Evidence of all of the foregoing was viewed by the Court in Exhibit C-1, a video depicting the processing procedure and continu[ing] on to show [Adeniran] kicking and fighting as officers attempted to place her in a cell. She was disruptive and uncooperative throughout. As she was placed in the cell[,] her disruptive behavior continued with her throwing a cup full of soda at the officers. Near its conclusion[,] the video showed [Adeniran] urinat[ing] on the floor near the toilet in the cell.

Trial Court Opinion, 11/8/18, at 7-9 (citations omitted).

Following a two-day bench trial, Adeniran was convicted of the two above-stated summary offenses. The court imposed a $500 fine on each offense.[3] Adeniran filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Adeniran raises the following issues for our consideration:

(1) Whether the evidence presented was sufficient to sustain a conviction for disorderly conduct as a misdemeanor of the third degree.

(2) Whether the evidence presented at trial was sufficient to sustain a conviction for simple assault.

(3) Whether the trial court abused its discretion in denying [Adeniran's] post-sentence motion alleging that the guilty verdicts were against the weight of the evidence.

Appellant's Brief, at 3.

[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, it must determine simply whether the evidence believed by the fact-finder was sufficient to support the verdict.

---

[3] Adeniran was acquitted of the following charges: aggravated assault, resisting arrest, institutional vandalism, harassment and public drunkenness.

*Commonwealth v. Ratsamy*, 934 A.2d 1233, 1235-36 (Pa. 2007) (emphasis in original) (citations and quotation marks omitted). "When reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence, and all reasonable inferences deducible from that, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offense beyond a reasonable doubt." *Id.* at 1237 (citation omitted).

Adeniran first claims that her disorderly conduct conviction is infirm because "the evidence does not show any intention on [her] part to disrupt the public order" where she was being "merely sarcastic and argumentative" and her "conduct was done in furtherance of a legitimate purpose of engaging the police in a dialogue and not intended to create public tumult." *Id.* at 7.

Disorderly conduct is defined in the Crimes Code as:

> (a)    Offense defined. — **A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:**
>
> > (1) engages in fighting or threatening, or in violent or tumultuous behavior;
> >
> > (2) makes unreasonable noise;
> >
> > (3) uses obscene language, or makes an obscene gesture; or
> >
> > (4) **creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.**

18 Pa.C.S. § 5503(a)(4) (emphasis added). "Public" is defined, for purposes of section 5503, as "affecting or likely to affect persons in a place to which the

public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public." *Id.* at § 5503(c).

Instantly, Officer Takacs testified that Adeniran arrived at the Darby Borough Police Department Headquarters at approximately 6:00 on the morning of September 4, 2017. N.T. Bench Trial, 7/13/18, at 4. At that time, the headquarters was not open to the public. *Id.* at 10. Officers Forlini and Takacs testified that the police station did not open its doors to the public until 8:00 a.m. N.T. Bench Trial, 6/15/18, at 40; N.T. Bench Trial, 7/13/18, at 6. *See also* N.T. Bench Trial, 6/15/18, at 10 ("There was no one in the lobby to watch anybody being in there, so we don't permit citizens other than police to be in there."). Accordingly, when Adeniran arrived at the station she was not permitted to enter the headquarters, but was required to remain in an outside vestibule area where there was a red telephone that citizens could use to make a phone call or file a complaint. *Id.* at 10 ("I was advised . . . that an individual that another officer had brought back to obtain a ride in a safe location at headquarters, outside, had been trying to come inside. That was not permitted at the time because it was not during business hours."); N.T. Bench Trial, 7/13/18, at 5 ("She was advised several times that she was not allowed to enter [the station]. It was not open for the public at that time."). It was in that vestibule area that Adeniran "persistently tr[ied] to enter" the station, telling the officers that she needed to charge her cell phone so she could obtain

a ride home. N.T. Bench Trial, 7/13/18, at 4. Officer Takacs testified that after 10 to 15 minutes of Adeniran insisting that she be permitted to enter the station to charge her phone, he placed her under arrest for public drunkenness and disorderly conduct. *Id.* at 7

In **Commonwealth v. Hock**, 728 A.2d 943 (Pa. 1999), our Supreme Court explained the purpose and intent of the disorderly conduct statute:

> Under the statute, whether a defendant's words or acts rise to the level of disorderly conduct hinges upon whether they cause or unjustifiably risk a public disturbance. "The cardinal feature of the crime of disorderly conduct is public unruliness which can or does lead to tumult and disorder." **Commonwealth v. Greene**, [] 189 A.2d 141, 144 (Pa. 1963).
>
> *       *       *
>
> [T]he offense of disorderly conduct is not intended as a catchall for every act which annoys or disturbs people; it is not to be used as a dragnet for all the irritations which breed in the ferment of a community. It has a specific purpose; it has a definite objective, it is intended to preserve the **public** peace; it has thus a limited periphery beyond which the prosecuting authorities have no right to transgress any more than the alleged criminal has the right to operate within its clearly outlined circumference.

*Id.* at 946-47 (emphasis in original) (citation omitted). **See Commonwealth v. Roth**, 531 A.2d 1133, 1164 (Pa. Super. 1987) ("The dangers and risks against which [section 5503(a)(4) of] the disorderly conduct statute are directed are the possibility of injuries resulting from public disorders.").

There is no documentary evidence in the certified record showing Adeniran and the Officer Takacs in the vestibule area located outside the main

door of police headquarters. *See* N.T. Bench Trial, 7/13/18, at 19 ("There's no video . . . of your actual arrest of [Adeniran], fair to say. Yes."). The videotape, entered as Exhibit C-1 at trial, shows Adeniran alone in a private room in the police station where officers took her demographic information and removed her jewelry and boots. The video later shows Adeniran in the holding cell. Moreover, there is no testimony that any civilians were either directly outside the station or in the vestibule area when Officer Takacs arrested Adeniran for the summary offense of disorderly conduct. Finally, it is undisputed that the station was not open to the public at the time these events occurred. *See* 18 Pa.C.S. § 5503(c).

The Commonwealth contends that the evidence was sufficient to prove disorderly conduct where "the defendant refused to leave the police station, became combative with police, dug her nails into an officer's arm, swung and kicked at police as they placed her in a holding cell, threw a cup of soda at police, and urinated on the floor in the cell." Appellee's Brief, at 7. From the video footage taken at the station, there is nothing that shows Adeniran committed her acts in public. *See Hock*, *supra* (evidence insufficient to support disorderly conduct conviction where defendant's single epithet, uttered in normal tone of voice while walking away from a police officer, did not alarm or frighten him, and there were no bystanders). As there is no evidence to show that Adeniran's actions occurred in public or in front of anyone but police officers in private rooms inside the station, we do not find that the Commonwealth sufficiently established all of the elements of the

offense beyond a reasonable doubt. *Ratsamy, supra*. Simply put, there is no proof that Adeniran intended to cause "*public* inconvenience, annoyance or alarm." 18 Pa.C.S. § 5503(a) (emphasis added). *See Commonwealth v. Fedorek*, 946 A.2d 93, 100 (Pa. 2008) (acknowledging "[s]ection 5503 is aimed at protecting the *public* from certain enumerated acts") (emphasis in original); *Commonwealth v. Forrey*, 108 A.2d 895 (Pa. Super. 2015) (where evidence did not support finding that defendant's loud shouts on public highway were heard by any passing drivers, judgment of sentence for disorderly conduct reversed).

Adeniran claims that the evidence was also insufficient to sustain her simple assault conviction where she did not cause bodily injury and did not exhibit the requisite *mens rea* under section 2701. Moreover, she asserts that Officer Forlini did not sustain "substantial" pain which is required under the statute, but only suffered "some very minor irritation." Appellant's Brief, at 8-9.

A person is guilty of simple assault "if [s]he: (1) **attempts to cause** or intentionally, knowingly or recklessly causes **bodily injury to another**[.]" 18 Pa.C.S. § 2701(a)(1) (emphasis added). "Bodily injury" is defined as an "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S. § 2301. Under section 2701(a)(1), the Commonwealth need not show that a complainant suffered an actual injury. *Commonwealth v. Brown*, 23 A.3d 544, 560 (Pa. Super. 2011) (en banc). Instead, a conviction under section 2701(a)(1) may be established be showing that a defendant had the specific

intent to cause bodily injury and took a substantial step toward causing bodily injury. *Id.*

In *Commonwealth v. Kirkwood*, 520 A.2d 451 (Pa. Super. 1986) (plurality decision), our Court found the evidence insufficient to establish either the "physical impairment" or the "substantial pain" elements necessary to prove bodily injury for simple assault. In that case, the complainant sustained "bruises and slight cuts on her arms . . . and her right knee and arms hurt as a result of the manner in which [the defendant] swung her during [a] dance" at a tavern. *Id.* at 454. Specifically, the Court stated, "[t]emporary aches and pains brought about by strenuous, even violent, dancing are an inadequate basis for imposing criminal liability upon a dance partner for assault. [Defendant's] invitation to the dance, even if uncivil and harassing, was not assaultive within the meaning of the statute." *Id.*

In an attempt to further define "bodily injury" under section 2701, our Court in *Commonwealth v. Wertelet*, 696 A.2d 206 (Pa. Super. 1996), stated:

> The term "bodily injury" is defined at 18 Pa.C.S.A. § 2301 as "impairment of physical condition or substantial pain." However the definition is worded rather generally and does not provide a great deal of guidance. Furthermore, there [are] surprisingly few cases that attempt to define the term. Although not necessarily controlling, the connotation of bodily injury, a sort of common person understanding of the term, suggests a physical event unlike those commonly occurring in normal life which, although unpleasant and somewhat painful, do not seriously interrupt one's daily life. Thus, if one cuts oneself shaving the average person does not think that he has suffered an injury even though such an event could be accompanied by some pain and bloodshed.

Similarly, if one stubbed a toe or dropped something on it, even though it could elicit a fair amount of pain and might even result in some limping and the ultimate loss of a toenail, one would not think of himself as "injured." The same could be said if one bumped an elbow against the wall or one's head on a low ceiling beam.

*Id.* at 210-11. *See also Interest of J.L.*, 475 A.2d 156, 157 (Pa. Super. 1984) (Court reversed adjudication of delinquency of sixteen-year-old for simple assault where she elbowed nephew to push him away; "it is difficult to attach criminality to the pushing, shoving, slapping, elbowing, hair-pulling, perhaps even punching and kicking, that frequently occur between siblings or other members of the same family.").

Instantly, the trial court opines that "the . . . facts proved beyond a reasonable doubt that Officer Forlini suffered significant pain and that [Adeniran ] intended to cause her bodily injury." Trial Court Opinion, 11/8/18, at 10.[4] Certainly, the Commonwealth did not have to show that Officer Forlini sought medical treatment or missed work as a prerequisite for a section 2701 conviction. *See In the Interest of M.H.*, 758 A.2d 1249 (Pa. Super. 2000); *see also Commonwealth v. Richardson*, 636 A.2d 1195 (Pa. Super. 1994). Nor did the prosecution have to prove that Officer Forlini actually suffered serious injury. Viewing all the evidence and all reasonable inferences in the light most favorable to the Commonwealth as the verdict winner, we conclude

_____

[4] To clarify, Officer Forlini, in fact, never testified that she was in *substantial* pain from Adeniran's actions. Rather, the officer testified that she was "in pain" after Adeniran dug her fingers into her wrist. N.T. Non-Jury Trial, 6/15/18, at 18, 31.

- 10 -

that there was sufficient evidence for the judge, as fact finder, to conclude that Adeniran committed the offense of simple assault. Considering the testimony of Officers Forlini and Takacs and the detailed videotape footage of Adeniran in the processing room and holding cell, the evidence proves that Adeniran's actions amounted to more than a "temporary hurt" resulting from "trivial contact." **Kirkwood**, **supra**. Rather, Adeniran's actions showed her intent to cause bodily injury upon the officer as she kicked and thrashed (causing her to have to be restrained by two male officers) when Officer Forlini attempted to remove her watch and boots. **See Commonwealth v. Moore**, 395 A.2d 1328 (Pa. Super. 1978) (well-established that trier of fact may infer criminal intent from circumstantial evidence).

In her final issue on appeal, Adeniran claims that the verdicts were against the weight of the evidence. Having determined that Adeniran's disorderly conduct conviction must be reversed, we need not address the weight claim as it pertains to that crime. With regard to whether Adeniran's simple assault conviction was against the weight of the evidence, we note that:

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

>> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. [**Commonwealth v.**]**Brown**, 648 A.2d [1177,] 1189 [(Pa. 1994)]. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons

advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. *Commonwealth v. Farquharson*, [] 354 A.2d 545 ([Pa.] 1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000). In rejecting Adeniran's weight claim, the trial judge found that Adeniran "intended to injure Officer Forlini [and h]er actions were in accord with her intent." Trial Court Opinion, 11/08/18, at 11. The trial court credited the police officers' testimony, as well as the videotape evidence, which proved Adeniran's intent to cause bodily injury. We find no abuse of discretion in the trial court's determination.

Judgment of sentence for simple assault affirmed. Disorderly conduct conviction reversed and judgment of sentence for disorderly conduct vacated. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/24/19