J-S05012-24

2024 PA Super 87

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
v. :
:
:
:
ANGELA MARIE HATCH : No. 553 WDA 2023

Appeal from the Order Entered April 14, 2023
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0001115-2022

BEFORE:  PANELLA, P.J.E., KING, J., and BENDER, P.J.E.

OPINION BY PANELLA, P.J.E.:                    **FILED: APRIL 26, 2024**

The Commonwealth appeals from the order granting a petition for writ of habeas corpus filed by Appellee, Angela Marie Hatch. We reverse.

The habeas court summarized the factual history of this matter as follows:

> Officer Joshua Wilson was working for the City of Altoona Police Department on Sunday, June 12, 2022. He responded to the area of 2001 1st Ave. in Altoona, where a white female was allegedly on a porch screaming. The caller identified the actor as Angela Hatch.
>
> Upon arrival the officer located Angela Hatch on the front porch of that residence. When the officers pulled up to the front porch, initially the defendant was sitting calmly in a chair on the end of the porch and advised them that she was yelling for two elderly females walking across the street to stop because she saw a speeding vehicle coming.
>
> The residence door was open, but its screen door was closed. The officer, believing the call had come from inside the residence, opened the screen door to make an effort to have

someone step outside or let him in. As he opened the screen door, the defendant came running across the porch and slammed the screen door on his right shoulder. She pushed the officer, saying that he had no right to go into her residence without a search warrant. At that point he began to handle her physically and advised her she was being detained. The Commonwealth did not produce the officer at the hearing in regard to the Petition for Habeas Corpus to testify as to the defendant's demeanor at that time, whether it appeared that as she came across the porch and contacted the officer attempting to enter her house she was intentionally, knowingly, or recklessly trying to hurt him, or whether she was trying to prevent him from going into her residence without permission and without a search warrant.

The officer pushed Ms. Hatch face first against the screen door and got her left arm behind her back. As he was trying to control her right hand she pushed off the wall and got her right arm free and swung it at the left side of his face, colliding with the left side of his face and giving him a little scratch on his face. She knocked his glasses off. At that time, he lifted her off the ground and placed her on her stomach and, helped by Officer Lucas, placed her in custody.

The officer had to force her hand behind her back to get her into custody. The officers sat her up, and during that time, after their actions forcing her to her stomach, she was screaming, saying that she had firearms in the house and was going to kill the officers.

The officer admitted there were no exigent circumstances that would permit him to enter the house without a warrant.

Trial Court Opinion, 6/12/23, at 2-4.

Hatch was charged with one count each of aggravated assault of an enumerated person, resisting arrest, disorderly conduct, and two counts of

terroristic threats.[1] A preliminary hearing was held on June 22, 2022, and Officer Wilson offered testimony. Thereafter, all charges were bound for trial.

Hatch filed an omnibus pretrial motion, which included a habeas motion challenging the prima facie evidence supporting the criminal charges. A hearing was held on January 11, 2023, and the parties submitted the matter to the habeas court on the June 22, 2022 preliminary hearing transcript, with no additional evidence having been presented.

On April 14, 2023, the habeas court entered an order granting Hatch's habeas motion regarding the aggravated assault charge. The Commonwealth filed this timely appeal.[2]

The sole issue presented for review is whether the trial court erred in granting the habeas corpus motion as to the charge of aggravated assault. *See* Commonwealth's Brief, at 4. The Commonwealth asserts that it presented a prima facie case establishing each element of aggravated assault and therefore met its burden of proof. *See id*. at 9-16. Specifically, the Commonwealth contends the testimony offered by Officer Wilson established

---

[1] 18 Pa.C.S.A. §§ 2702(a)(3), 5104, 5503(a)(2), and 2706(a)(1), respectively.

[2] The Commonwealth has certified, pursuant to Pennsylvania Rule of Appellate Procedure 311(d), the trial court's order granting habeas relief as to the aggravated assault charge substantially handicaps the prosecution of this case. Commonwealth's Brief at 1. Therefore, pursuant to Pa.R.A.P. 311(d), this Court has jurisdiction to hear this appeal from the trial court's interlocutory order, even though the order did not terminate the prosecution.

that he was acting in his official capacity and Hatch's actions and statements, taken together, establish an attempt to cause bodily injury to the officer. *See id*. In addition, the Commonwealth observes that any possible justification defense Hatch has should be left for a jury's consideration. *See id*. at 16. In summary, the Commonwealth argues that the evidence offered at the preliminary hearing met the necessary burden and requires the charge of aggravated assault to proceed to trial. We agree.

We begin by observing that "[w]here a criminal defendant seeks to challenge the sufficiency of evidence presented [by the Commonwealth] at his preliminary hearing, he may do so by filing a writ of habeas corpus with the court of common pleas." *Commonwealth v. Carmody*, 799 A.2d 143, 146 (Pa. Super. 2002) (citation omitted). "In such instances, the habeas court acts in the capacity of a reviewing court to assess whether a *prima facie* case was presented at the preliminary hearing, that is, whether sufficient evidence exists to require the defendant to be brought to trial." *Id*. at 146-47 (citation omitted).

> A *prima facie* case consists of evidence, read in the light most favorable to the Commonwealth, that sufficiently establishes both the commission of a crime and that the accused is probably the perpetrator of that crime. The Commonwealth need not prove the defendant's guilt beyond a reasonable doubt. Rather, the Commonwealth must show sufficient probable cause that the defendant committed the offense, and the evidence should be such that if presented at trial, and accepted as true, the judge would be warranted in allowing the case to go to the jury.

***Commonwealth v. Keller***, 823 A.2d 1004, 1010 (Pa. Super. 2003) (citation omitted).

"[T]he evidentiary sufficiency, or lack thereof, of the Commonwealth's *prima facie* case for a charged crime is a question of law as to which an appellate court's review is plenary." ***Commonwealth v. Karetny***, 880 A.2d 505, 513 (Pa. 2005) (citation omitted). "Indeed, the trial court is afforded no discretion in ascertaining whether, as a matter of law and in light of the facts presented to it, the Commonwealth has carried its pre-trial, *prima facie* burden to make out the elements of a charged crime." ***Id***.

Section 2702(a)(3) of our Crimes Code provides that a person is guilty of aggravated assault against a police officer, a felony of the second degree, if he "attempts to cause or intentionally or knowingly causes bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c), in the performance of duty[.]" 18 Pa.C.S.A. § 2702(a)(3). "Bodily injury" is defined as "impairment of physical condition or substantial pain." 18 Pa.C.S.A. § 2301.

Moreover:

The Commonwealth need not establish that the victim actually suffered bodily injury; rather, it is sufficient to support a conviction if the Commonwealth establishes an attempt to inflict bodily injury. This intent may be shown by circumstances which reasonably suggest that a defendant intended to cause injury.

. . .

… To show an "attempt" to inflict bodily injury, it must be shown that the actor had a specific intent to cause bodily injury[.] A

- 5 -

person acts intentionally with respect to a material element of an offense if it is his conscious object to engage in conduct of that nature or to cause such a result[.]

**Commonwealth v. Richardson**, 636 A.2d 1195, 1196 (Pa. Super. 1994)

(citations omitted).

In **Commonwealth v. Marti**, 779 A.2d 1177 (Pa. Super. 2001), this Court opined:

> Although *dictum*, in [**Commonwealth v. Wertelet**, 696 A.2d 206 (Pa. Super. 1997),] we recognized "logically speaking, a simple assault committed against a police officer in the performance of his duties would satisfy the elements of § 2702(a)(3)." **Wertelet**, 696 A.2d at 212 fn.8. The only differences between assaults under § 2701(a)(1) and § 2702(a)(3) are that the latter applies when the assault is committed upon one of the persons enumerated in § 2702(c) in the performance of their duties and the latter does not allow for a *mens rea* of recklessness. Consequently, for purposes of defining the bodily injury component of these provisions, whether the assault is characterized as "simple" or "aggravated" has no bearing on our interpretation. Calling a simple assault upon a police officer aggravated merely reflects the legislature's intent to punish this assault more severely than one committed upon a layperson, which is accomplished by grading the offense as a felony of the second degree rather than a misdemeanor of the second degree.

**Marti**, 779 A.2d at 1182-83 (footnote omitted).

Here, the habeas court offered the following reasoning in support of its determination that the Commonwealth did not present a prima facie case of aggravated assault against an enumerated person:

> The testimony at [the] preliminary hearing was that the officer opened the screen door of the defendant's house. As he opened the screen door, the defendant came running across the porch and slammed the screen door on his right shoulder. She pushed the officer, saying that he had no right to go into her residence without a search warrant. After the officer pushed the

- 6 -

defendant face first into the door, her arm came back and connected to his face. His glasses flew off and he received a scratch.

The court finds from this testimony that the defendant acted to prevent the officer from going into her house when he opened the screen door. She pushed him, saying that he had no right to go into her residence. His testimony was that he did not have a search warrant and there were no exigent circumstances which would permit him to go into her house.

We further find that her action that resulted in the scratch to the officer's face was a reaction to being pushed face first into the door. We do not find that the Commonwealth has produced evidence that the defendant intentionally attempted to cause or intentionally or knowingly caused bodily injury to the police officer.

Trial Court Opinion and Order, 4/14/23, at 4.

Our review of the certified record reflects that Officer Wilson offered detailed testimony at the preliminary hearing concerning the incident. *See* N.T. (Preliminary Hearing), 6/22/22, at 2-11 (unnumbered). Officer Wilson gave the following synopsis of events as he arrived on the scene following dispatch:

We were originally called for an anonymous caller reporting that a white female was on their porch screaming. They identified the actor was to be an Angela Hatch. Upon arrival, we located Angela on the front porch of that 2001 1st [A]venue address. We briefly made contact with her based on the dispatch I believe that the caller was inside the residence reporting on Angela. Upon arrival I found that the residence door was open, it was just simply blocked by a screen door, I heard light muffled speaking inside. That speaking ended up determined to be a TV but I believed the caller was inside, so I just briefly made contact with Angela and I opened the screen just to make an effort to call in to have anyone step outside with us or permit me in. And then **as I opened the screen door Mrs. Hatch came running across the porch and slammed the screen door on to my right shoulder on my**

**person. And at that point, she was overly aggressive she
pushed me** saying I had no right to go into her residence without
a search warrant even though I didn't make an effort to go into
the house I just opened the screen door. And at the point, I
advised her she was being detained.

*Id*. at 3 (unnumbered) (emphasis added). Officer Wilson offered the following

additional testimony concerning how the incident escalated as Hatch was

being detained:

After she slammed the door on my right shoulder, I advised she
was being detained. I pushed her face first or front first against
the same screen door and got her left arm behind her back. As I
was trying to get control of her right hand, she pushed of the wall
and created a little bit of space that she was able to get her right
arm free and she swung it at the left side of my face. She collided
with the left side of my face. I had a little scratch here and she
knocked the glasses off.

*Id*. The officer further testified, "She struck me with her right hand in the left

temple area. I had a, her jewelry is what caused most of the injury. I had a

scratch on my temple and she knocked my glasses off." *Id*. at 10

(unnumbered). Officer Wilson also explained that after Hatch was detained

and he was searching for his glasses, "Mrs. Hatch was screaming, saying she

had small (inaudible) firearms in the house and she was going to kill myself

and Officer Lucas."[3] *Id*. at 4.

The evidence presented by the Commonwealth established a prima facie

case of aggravated assault of an enumerated person. Hatch's behavior,

_____

[3] Officer Lucas was also at the scene. *See* N.T. (Preliminary Hearing), 6/22/22,
at 4 (unnumbered).

particularly her "overly aggressive" conduct, reasonably suggests that she intended to cause bodily injury. The testimony of Officer Wilson provided sufficient probable cause that Hatch attempt to inflict bodily injury; credibility determinations, and Hatch's contention of another motive for her actions, are for the trier of fact. Therefore, there is probable cause to believe that Hatch attempted to cause or intentionally or knowingly caused bodily injury to an officer in the performance of his duty. Consequently, it is our determination that the habeas court erred in reaching a contrary conclusion.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

FILED: <u>4/26/2024</u>