J-A06027-25          2025 PA Super 88

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
v. :
:
:
:
PARIS BARTLETT :
:
Appellee : No. 1641 EDA 2024

Appeal from the Order Entered May 15, 2024
In the Court of Common Pleas of Lehigh County Criminal Division
at No(s): CP-39-CR-0003071-2023

BEFORE: PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.: **FILED APRIL 16, 2025**

The Commonwealth appeals[1] from the May 15, 2024 order granting, in part, the ***omnibus*** pre-trial motion for ***habeas corpus*** relief filed by Appellee, Paris Bartlett. After careful review, we reverse the trial court's order and remand for proceedings consistent with this opinion.

The trial court summarized the relevant facts and procedural history of this case as follows:

> [Appellee] was originally charged with aggravated assault (4 counts), fleeing or attempting to elude police, accidents involving death or personal injury while not properly licensed, resisting arrest, recklessly endangering another person (2 counts), possession of

---

* Former Justice specially assigned to the Superior Court.

[1] The Commonwealth certified, pursuant to Pa.R.A.P. 311(d), that the trial court's May 15, 2024 order will terminate or substantially handicap the prosecution.

a controlled substance (3 counts), and thirteen (13) summary driving offenses. [Appellee] who was the subject of a drug investigation conducted by a joint enforcement operation, was arrested after a chase with members of the Allentown Police Department and the Pennsylvania State Police. The Commonwealth's theory with respect to the aggravated assault charges (counts 1-3) was that [Appellee] "attempted to cause bodily injury" to three (3) officers, two Allentown Vice Detectives and one State Police Trooper. None of the officers were struck or injured by the vehicle [Appellee] was driving.

The chase commenced after vice detectives, who were in an unmarked vehicle, requested uniformed officers, Trooper Peter Hamati-Attieh and Officer Thomas Cunningham, to stop the vehicle [Appellee] was operating. While the vice detectives positioned themselves behind [Appellee's] vehicle, the uniformed officers, who were paired together, pulled their vehicle "mostly in front of" [Appellee's] vehicle. The distance between the two vehicles was "one to two feet." The uniformed officers exited their vehicle and approached [Appellee's] vehicle. They both barked orders at him, which he ignored. Officer Cunningham went to the driver's side door, and, in an attempt to open it, ripped the door handle off the vehicle. Trooper Hamati-Attieh "started near the driver's door, and … ended up in front of [Appellee's] vehicle.

A few seconds later, according to Officer Cunningham, [Appellee] put his vehicle in reverse, which cause him to strike the unmarked vice detectives' vehicle. He then put the vehicle in drive and proceeded forward in the direction of Trooper Hamati-Attieh. Trooper Hamati-Attieh's reaction was to fire two (2) shots from his service weapon, striking [Appellee's] windshield.

When the shots were fired, according to Officer Cunningham, [Appellee] was "trying to get away." The video evidence of this event captured from a pole camera, depicts [Appellee's] vehicle pull sharply to the right, traveling over the sidewalk and around the patrol vehicle. He then fled from the scene, and a

chase ensued through east-side neighborhoods. His flight included traveling the wrong way across the Hamilton Street Bridge, and causing numerous vehicles to swerve to avoid a collision. At other points during the pursuit, a motorist was struck by [Appellee's] vehicle, as was a state police vehicle. He continued to ignore the pursuing vehicles, who had activated their lights and sirens, until Trooper Hamati-Attieh executed a PIT maneuver, which brought [Appellee's] vehicle to a stop.

Numerous officers responded to the scene to remove [Appellee] from his vehicle. He did not exit the vehicle of his own accord, and up to six officers removed him through the driver's side window, and then took him into custody.

Trial court opinion, 7/11/24 at 1-3 (footnotes, citations, and extraneous capitalization omitted).

On February 16, 2024, Appellee filed an **omnibus** pre-trial motion for **habeas corpus** that sought, **inter alia**, dismissal of the three aggravated assault charges because the Commonwealth had presented insufficient evidence to make a **prima facie** case. On March 13, 2024, the trial court conducted an evidentiary hearing on Appellee's motion, during which the Commonwealth presented the testimony of Officer Cunningham, the dash camera video, and photographic evidence. Following the hearing, the trial court granted Appellee's motion to dismiss, in part, on May 15, 2024. The trial court reasoned that the Commonwealth failed to establish a **prima facie** case that Appellee intended to cause bodily injury to Trooper Hamati-Attieh, Vice Detective Jose Ozoa, and Vice Detective Walter Oquendo with his vehicle, and took substantial steps towards doing so. **See** trial court order and opinion,

5/15/24 at 4-8. The Commonwealth filed a timely notice of appeal on June 14, 2024.[2]

The Commonwealth raises the following issue for our review:

> Did the trial court manifestly abuse its discretion and/or commit an error of law in granting [Appellee's] motion to dismiss (***habeas corpus***) when the evidence and reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth, established a ***prima facie*** case with regards to Aggravated Assault, Counts 1-3 (***i.e.*** one count 18 Pa.C.S.A. § 2702(a)(4) and two counts 18 Pa.C.S.A. § 2702(a)(3))?

Commonwealth's brief at 4 (extraneous capitalization omitted).

A pre-trial ***habeas corpus*** motion is the proper means for testing whether the Commonwealth has sufficient evidence to establish a ***prima facie*** case. ***Commonwealth v. Dantzler***, 135 A.3d 1109, 1112 (Pa.Super. 2016) (citation omitted).

> In reviewing a trial court's order granting a defendant's petition for writ of ***habeas corpus***, we must generally consider whether the record supports the trial court's findings, and whether the inferences and legal conclusions drawn from those findings are free from error. Further, the evidentiary sufficiency, or lack thereof, of the Commonwealth's ***prima facie*** case for a charged crime is a question of law, and the appellate court's review is plenary.

***Commonwealth v. Little***, 305 A.3d 38, 43–44 (Pa.Super. 2023) (citations and internal quotation marks omitted).

---

[2] The Commonwealth and the trial court have complied with Pa.R.A.P. 1925.

> A ***prima facie*** case consists of evidence, read in the light most favorable to the Commonwealth, that sufficiently establishes both the commission of a crime and that the accused is probably the perpetrator of that crime.
>
> **. . . .**
>
> The Commonwealth establishes a ***prima facie*** case when it produces evidence[] that, if accepted as true, would warrant the trial judge to allow the case to go to a jury. The Commonwealth need not prove the elements of the crime beyond a reasonable doubt; rather, the ***prima facie*** standard requires evidence of the existence of each and every element of the crime charged. Moreover, the weight and credibility of the evidence are not factors at this stage, and the Commonwealth need only demonstrate sufficient probable cause to believe the person charged has committed the offense. Inferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case.

***Commonwealth v. Ouch***, 199 A.3d 918, 923 (Pa.Super. 2018) (citations and internal quotation marks omitted).

Viewing the evidence in a light most favorable to the Commonwealth, and mindful that a ***prima facie*** case is a low threshold of proof, we find that the trial court committed an error of law in dismissing the three aggravated assault charges against Appellee.

To sustain a conviction for aggravated assault under Subsection 2702(a)(4), the Commonwealth must prove that the person "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon," in this case a motor vehicle. 18 Pa.C.S.A. § 2702(a)(4). The

Crimes Code defines a deadly weapon, in relevant part, as "any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury." *Id.* § 2301. In *Commonwealth v. Thomas*, 656 A.2d 514 (Pa.Super. 1995), a panel of this Court recognized that an automobile may constitute a deadly weapon if used in manner that is improper and inherently dangerous. *Id.* at 519.

Likewise, a person will be found guilty of aggravated assault under Subsection 2702(a)(3) "if he … attempts to cause or intentionally or knowingly causes bodily injury to … [an] officer[] … in the performance of duty[.]" 18 Pa.C.S.A. § 2702(a)(3). Bodily injury is defined as "impairment of physical condition or substantial pain." 18 Pa.C.S.A. § 2301.

Moreover, we note that:

> [t]he Commonwealth need not establish that the victim actually suffered bodily injury; rather, it is sufficient to support a conviction if the Commonwealth establishes an attempt to inflict bodily injury. This intent may be shown by circumstances which reasonably suggest that a defendant intended to cause injury.
>
> . . . .
>
> To show an 'attempt' to inflict bodily injury, it must be shown that the actor had a specific intent to cause bodily injury. A person acts intentionally with respect to a material element of an offense if it is his conscious object to engage in conduct of that nature or to cause such a result.

- 6 -

***Commonwealth v. Hatch***, 314 A.3d 928, 932 (Pa.Super. 2024) (citation and brackets omitted).

Here, the evidence, and the reasonable inferences derived therefrom, are clear. On June 16, 2023, the Allentown Police Department and the Pennsylvania State Police were engaged in a joint drug enforcement investigation in the City of Allentown. Notes of testimony, 3/13/24 at 7-8. During a traffic stop of Appellee's vehicle for Motor Vehicle Code violations, Allentown Vice Detectives Ozoa and Oquendo positioned their vehicle behind Appellee's vehicle, and two uniformed law enforcement officers – Pennsylvania State Police Trooper Hamati-Attieh and Allentown Police Officer Cunningham – pulled their cruiser at an angle "mostly in front of" Appellee's vehicle. ***Id.*** at 12-15. The record reflects that after Trooper Hamati-Attieh and his partner exited their cruiser and repeatedly ordered Appellee to exit his vehicle, Appellee ignored their commands and abruptly put his vehicle in reverse, striking the Vice Detectives' vehicle. ***Id.*** at 16-17. Appellee then proceeded to accelerate his vehicle towards Trooper Hamati-Attieh, who was standing in directly in front of it at the time, and drove at Trooper Hamati-Attieh before sharply veering to the right and traveling over the sidewalk. ***Id.*** at 17-20. Trooper Hamati-Attieh reacted by firing two gunshots into the windshield of Appellee's vehicle, striking above the steering wheel area and near the driver's side A-pillar. ***Id.*** This encounter was captured from a video surveillance

camera located on a utility pole at 3rd and Hamilton Streets.  *Id.* at 20-22; *see also* Commonwealth Exhibits 2(a) and 2(b).

As noted, it is well-settled in this Commonwealth that the prosecution "need not prove the elements of the crime beyond a reasonable doubt; rather, the *prima facie* standard requires evidence of the existence of each and every element of the crime charged."  *Ouch*, 199 A.3d at 923 (citation omitted). This evidence clearly establishes a *prima facie* case that Appellee attempted to cause bodily injury to Trooper Hamati-Attieh with his vehicle, and attempted to cause bodily injury to both Vice Detectives Ozoa and Oquendo while they were engaged in the performance of their duties.  Whether the safety of these law enforcement officers was placed in jeopardy by Appellee's actions on the day in question is clearly a question for the jury.  Based on the foregoing, we find that the trial court erred in dismissing the three aggravated assault charges against Appellee, reverse its May 15, 2024 order, and remand for further proceedings consistent with opinion.

Order reversed.  Case remanded.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/16/2025

- 8 -